[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 245.]

THE STATE EX REL. PRICE, APPELLEE, *v*. CENTRAL SERVICES, INC.; CONRAD, ADMR., BUREAU OF WORKERS' COMPENSATION, ET AL., APPELLANTS.

[Cite as *State ex rel. Price v. Cent. Serv., Inc.,* 2002-Ohio-6397.]

*Workers' compensation—Court of appeals' judgment granting a writ of mandamus ordering the Industrial Commission to recalculate relator-claimant's permanent total disability award applying the statutory cap in R.C. 4123.58 in effect at the time relator-claimant was forced from the job market affirmed—State ex rel. Lemke, clarified.*

(No. 2001-0190—Submitted June 26, 2002—Decided December 4, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-124.

————————————

**ALICE ROBIE RESNICK, J.**

{¶1} On December 22, 1969, claimant-appellee, Patrick D. Price, received a multitude of severe injuries in the course of and arising from his employment as an appliance repair person for Central Services, Inc. His workers' compensation claim was allowed by appellant Industrial Commission of Ohio for "[c]ompound fracture right distal radius and ulna; comminuted fracture right olecranon; compound fracture right tibia and fibula; fracture right ankle with trimalleolar; fracture left tarsus with dislocation; fracture left femur mid shaft; multiple lacerations; fracture of right humerus; post traumatic degenerative arthritis in right wrist, right ankle and right foot; arthritis right knee."

{¶2} Due to his industrial injuries, Price was unable to work for over a year. During that time, Price received temporary total disability compensation based on an average weekly wage ("AWW") of $56. This AWW was calculated on the basis of Price's earnings for the year preceding his injury (1968), in accordance with the standard method for calculating a claimant's AWW under R.C. 4123.61. Price

eventually returned to his employment and continued working at higher salaries for over 26 additional years, despite numerous hospitalizations and surgeries and continuing degradation of his health.  He last worked on March 31, 1997.  His AWW, based on his earnings in 1996, is $484.44.

{¶3} On December 13, 1997, Price applied for permanent total disability ("PTD") compensation.  In March 1999, a staff hearing officer awarded Price PTD compensation from December 15, 1997, at a rate of $45.50 per week.  It appears that this rate was computed by multiplying Price's 1968 AWW of $56 by 66 and 2/3 percent, and then raising that amount to the statutory minimum rate for PTD awards that was in effect in 1969.  See former R.C. 4123.58, 132 Ohio Laws, Part I, 1420.  Price's PTD award was then reduced to $36.40 per week after he applied for and was granted a lump-sum payment of $4,358.90 for attorney fees.

{¶4} Price then moved for an upward adjustment of his AWW and a recalculation of his weekly PTD payments in order to reflect his earnings in 1996, the last full year that he worked before his industrial injuries forced him from the job market.  In support of this request, Price relied upon the "special circumstances" provision in R.C. 4123.61 and this court's decision in *State ex rel. Lemke v. Brush Wellman, Inc.* (1998), 84 Ohio St.3d 161, 702 N.E.2d 420.  Based on this authority, and finding "extraordinary circumstances," the staff hearing officer granted Price's motion, reset his AWW at $484.44, and ordered that Price's PTD rate "be readjusted in light of claimant's average weekly wage being set at $484.44."

{¶5} In a split decision, the commission modified the order of its staff hearing officer.  The commission increased Price's AWW from $56 to $484.44, but then limited his PTD award to a maximum rate of $56 per week.  In so doing, the commission made three essential findings.  First, the commission found that the staff hearing officer's "decision is based upon the misapplication of [*Lemke*]."  According to the commission's order, *Lemke* is limited to the situation where a claimant suffering from an occupational disease incurs no compensable lost time

2

prior to becoming permanently and totally disabled. In contrast, the commission explained, Price's "claim involves an injury and not an occupational disease" and Price "was disabled and paid temporary total disability compensation in 1969."

**{¶6}** Second, the commission found that despite the inapplicability of *Lemke*, Price's situation constitutes "special circumstances" under R.C. 4123.61, and that in order to do substantial justice in this case, Price's AWW should nevertheless "be set at $484.44, which represents [his] earnings for the year prior to his last date worked divided by 52 weeks worked."

**{¶7}** Third, the commission found that regardless of Price's AWW, his PTD award must "be paid at the statutory maximum rate [of $56 per week] pursuant to the provisions of Section 4123.58 of the Revised Code for a 1969 injury claim."

**{¶8}** The dissenting commissioner agreed that Price's AWW should be raised to $484.44, but disagreed with the majority's decision to limit Price's permanent total disability compensation to the statutory maximum rate for a 1969 injury. The dissenter believed that "the holding of *Lemke* applies to this case, regardless of the fact that this is an injury claim and not an occupational disease claim," and pointed out that "[i]n *Lemke*, the Court specifically ordered that the AWW and PTD be recomputed."

**{¶9}** Following this decision, Price filed a complaint in the court of appeals, seeking a writ of mandamus to compel the commission "to set his average weekly wage for the calculation of permanent total disability benefits from the year prior to his application for said benefits and not based upon the statutory rate of a 1969 injury." A magistrate recommended that the requested writ be denied. According to the magistrate, *Lemke* may fairly be interpreted to mean that under special circumstances, a claimant's right to PTD compensation for an occupational disease is subject to whatever statutory maximum limit is in effect on the date of the claimant's disability, but *Lemke* does not apply in injury claims. In cases involving an industrial injury, as opposed to an occupational disease, the maximum amount

of weekly PTD benefits is always determined by the statute in force on the date of injury, even where special circumstances require the claimant's AWW to reflect his or her earnings at the time of disability.

**{¶10}** On objections to the magistrate's decision, the court of appeals found the magistrate's recommendation to be "incorrect as a matter of law" and granted a writ "ordering the commission to recalculate relator's AWW based upon his earnings from 1996." While this writ appears to compel the commission to do what it already did, which is to set Price's AWW at $484.44, it is clear from the appellate court's decision that the court was also ordering the commission to determine Price's PTD rate in accordance with his newly established AWW without regard to the $56 per week cap on PTD awards that was in effect in 1969.

**{¶11}** The cause is now before this court upon an appeal as of right.

**{¶12}** This case has been needlessly complicated by the various interpretations and limitations placed upon our decision in *State ex rel. Lemke*, 84 Ohio St.3d 161, 702 N.E.2d 420. The issue is simply whether Price's PTD award is subject to the statutory limit in effect on the date of his injury. To determine this issue, we need consider the relationship between only R.C. 4123.58 and 4123.61 as they both existed in 1969, and decide whether the $56 limit in former R.C. 4123.58, like the standard formula for determining AWW in R.C. 4123.61, must also give way in light of the "special circumstances" of this case. However, we are now constrained to dispel certain misconceptions regarding our decision in *Lemke*.

**{¶13}** R.C. 4123.61 sets forth a standard method or formula for calculating the AWW of injured employees, which serves as the basis upon which to compute disability benefits. R.C. 4123.61[1] provides: "In * * * permanent total disability * * * claims, the claimant's * * * average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly

---

1. The current version of R.C. 4123.61 is substantively identical to the version in effect in 1969. See 128 Ohio Laws 764.

wage upon which compensation shall be based." Thus, under the standard formula, the applicable base year for determining a claimant's AWW for purposes of PTD compensation is dependent upon whether the claimant's PTD is the result of an injury or an occupational disease. Once the appropriate base year is ascertained, AWW is calculated by simply dividing the claimant's total earnings for that year by 52 weeks or a lesser number if there is "any period of unemployment due to * * * [a] cause beyond the employee's control."

{¶14} The General Assembly recognized, however, that the application of standard formulas may not always produce a fair approximation of a claimant's probable future earnings. Accordingly, R.C. 4123.61 further provides:

"In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants."

{¶15} This court has repeatedly stated that R.C. 4123.61 is designed to "find a fair basis for award for the loss of future compensation." See *State ex rel. Thompson v. Ohio Edison Co.* (1999), 85 Ohio St.3d 290, 292, 707 N.E.2d 940; *State ex rel. Clark v. Indus. Comm.* (1994), 69 Ohio St.3d 563, 564, 634 N.E.2d 1014; *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 287, 551 N.E.2d 1265. Indeed, as Professor Larson explains:

{¶16} "The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. This worker's disability reaches into the future, not the past; the loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of the worker's life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of

this claimant's own earnings in some arbitrary past period has been used as a wage basis." (Footnote omitted.) 5 Larson's Workers' Compensation Law (1987) 93-17, Section 93.01[1][g].

{¶17} In *Lemke*, we confronted a situation in which the claimant, Galen Lemke, was diagnosed with the occupational disease berylliosis in 1970, but continued to work at higher salaries until the ever-increasing debilitating effects of his disease forced him from the job market in 1990. The commission granted Lemke's 1990 application for PTD compensation, but calculated his benefits based on his AWW in 1969, the year before he was diagnosed with berylliosis. We held that "the commission abused its discretion in setting Lemke's AWW according to his earnings for the year before his diagnosis" and affirmed the court of appeals' judgment issuing a writ ordering the commission "to vacate its ruling and to incorporate in its AWW calculation Lemke's earnings for the year before he could no longer work." Id., 84 Ohio St.3d at 164, 702 N.E.2d 420.

{¶18} In so holding, we explained that "[u]nder R.C. 4123.61, permanent total disability compensation ('PTD') for an occupational disease must be based on the employee's average weekly wage ('AWW') for the year before the disability began, unless 'special circumstances' justify another basis. * * * In this appeal as of right, Lemke contends that the commission's order is substantially unjust because he continued to work, despite significant permanent partial impairment from the disease, for over eighteen years at higher salaries. We agree that these are special circumstances justifying an AWW commensurate with Lemke's salary in 1989, the year before his disease forced him from the job market. For this reason, we affirm the court of appeals' judgment granting a writ of mandamus that orders the commission to recompute Lemke's AWW and PTD." Id., 84 Ohio St.3d at 162, 702 N.E.2d 420.

{¶19} In the present cause, Price received an industrial injury in 1969. His AWW for the preceding year was set at $56. After an initial period of temporary

disability, Price returned to his employment and remained a productive employee for over 26 additional years, despite continuing degradation of his health. When Price's industrial injury finally rendered him permanently and totally disabled in 1997, his AWW, based on his earnings for the preceding year, was $484.44. The commission agreed that these are special circumstances justifying an AWW commensurate with Price's earnings in 1996, the year before his industrial injuries forced him from the job market. Thus, the commission increased Price's AWW from $56 to $484.44.

**{¶20}** The commission's decision with regard to Price's AWW corresponds closely, both in rationale and result, to our decision in *Lemke*. Indeed, there is no discernable difference between the commission's application of the special-circumstances exception to calculate Price's AWW and our application of the special-circumstances exception to calculate Lemke's AWW. Yet in determining Price's AWW, the commission found *Lemke* distinguishable from and, therefore, inapplicable to this case because Lemke suffered from an occupational disease, whereas Price suffers from an industrial injury. In so doing, however, it does not appear that the commission's real concern was with *Lemke*'s applicability to the issue of Price's AWW. Otherwise, the commission would not have needed to distinguish *Lemke*, since it held in any event that Price's AWW should reflect his earnings for the year preceding his last day worked. Instead, it appears that the commission's primary motivation in limiting *Lemke* to occupational disease claims was to avoid the purported application of *Lemke* to determine Price's maximum PTD rate.

**{¶21}** Given this confusion, we find it necessary to clarify that our decision in *Lemke* is neither dispositive with regard to the issue of the applicable statutory ceiling on PTD awards nor restricted to determining the AWW of claimants with occupational diseases. Contrary to what appears to be the consensus in this case, the issue of the applicable statutory limit on PTD awards in special-circumstances

cases was never decided in *Lemke*. It is true that we affirmed the court of appeals' judgment granting a writ that ordered the commission "to recompute Lemke's AWW *and PTD*." (Emphasis added.) *Lemke*, 84 Ohio St.3d at 162, 702 N.E.2d 420. However, regardless of whether the court of appeals' order in *Lemke* amounted to a directive to apply the statutory maximum limit in effect on Lemke's last day worked, the truth is that we never specifically addressed this issue in *Lemke*. Accordingly, we do not consider our decision in *Lemke* to be determinative on this issue.

{¶22} But *Lemke* does apply to determine a claimant's AWW in injury claims as well as occupational disease claims. For purposes of determining a claimant's PTD, the distinction between an occupational disease and an industrial injury is significant only when applying the standard formula under R.C. 4123.61. Once the special-circumstances exception is invoked, the standard formula is no longer applicable and, therefore, the distinction between an occupational disease and an industrial injury is no longer relevant. Since *Lemke* involved the application of this exception, its holding cannot be limited to occupational-disease claims.

{¶23} However, both the commission and the court of appeals magistrate seem to suggest that while we ostensibly relied upon the special-circumstances exception in *Lemke*, we actually determined that the commission had misapplied the standard formula for establishing the AWW of a claimant with an occupational disease. In other words, our real intent was to hold that under the standard formula, "disability due to the occupational disease" begins on the date the claimant quits working. Similarly, Philip J. Fulton suggests that "[e]ven though the Court [in *Lemke*] cited the special-circumstances exception in R.C. §4123.61, as the rationale for its decision, the language of the opinion sounds like the court was referring to a *White v. Mayfield* [(1988), 37 Ohio St.3d 11, 523 N.E.2d 497] determination." Fulton, Ohio Workers' Compensation Law (2d Ed.1988, Cumulative Supp.2002) 44, Section 9.2.

{¶24} In *White*, we held that "[p]ursuant to R.C. 4123.85, disability due to an occupational disease shall be deemed to have begun on the date on which the claimant first became aware through medical diagnosis that he or she was suffering from such disease, or the date on which claimant first received medical treatment for such disease, or the date claimant first quit work on account of such disease, whichever date is the latest." Id. at the syllabus. See, also, *State ex rel. Preston v. Peabody Coal Co.* (1984), 12 Ohio St.3d 72, 12 OBR 63, 465 N.E.2d 433 (under standard formula in R.C. 4123.61, "disability due to the occupational disease" begins on the day after the claimant's last day of work).

{¶25} It may very well be that the commission misapplied the standard formula in determining Lemke's AWW, and perhaps this issue should have been raised and addressed in that case. But this issue was simply not decided in *Lemke*, nor was it discussed in any manner or form. In addressing the propriety of the commission's calculation in *Lemke*, we never discussed whether the commission simply misapplied the standard formula in R.C. 4123.61 by establishing Lemke's AWW on the basis of his earnings for the year preceding the diagnosis of his occupational disease, rather than the year preceding the year of his last day worked. We never cited or gave any indication that we were relying on *White* or *Preston*, and we mentioned the standard formula only to indicate that the presence of special circumstances warrants any alternative method that promotes substantial justice.

{¶26} Instead, we relied exclusively on the special-circumstances exception and explained:

{¶27} "An employee who is able to earn a living only by persevering for more than eighteen years while losing ground to insidious occupational disease should be compensated equitably for his or her disability. And we specifically distinguish Lemke from the employee in *State ex rel. Cawthorn v. Indus. Comm.* (1997), 78 Ohio St.3d 112, 676 N.E.2d 886, who wanted his established AWW raised just because he aggravated his allowed injury while making more money.

That employee's AWW was set at $256, whereas Lemke's AWW was only $52.50, an amount so low that it manifestly raises the spectre of inequity. Moreover, Lemke had increased his earnings because he would not submit to his disease, not because he recovered and got a better job, as did the employee in *Cawthorn*. Id. at 115, 676 N.E.2d at 888.

{¶28} "This is the uncommon situation for which the special-circumstances exception in R.C. 4123.61 exists—when the AWW is based on an 'obviously * * * unjust barometer of [the claimant's] prospective future average wages that would be lost if [the claimant] could not work.' *State ex rel. Clark*, 69 Ohio St.3d at 566, 634 N.E.2d at 1016, quoting [*State ex rel.*] *Riley* [*v. Indus. Comm.* (1983)], 9 Ohio App.3d [71], 73, 9 OBR [90], 93, 458 N.E.2d [428], 431. * * * Accordingly, we affirm the judgment of the court of appeals granting a writ of mandamus that orders the commission to vacate its ruling and to incorporate in its AWW calculation Lemke's earnings for the year before he could no longer work." *Lemke*, 84 Ohio St.3d at 164, 702 N.E.2d 420.

{¶29} Thus, *Lemke* does not hold that for purposes of establishing a claimant's AWW under the standard formula in R.C. 4123.61, "disability due to the occupational disease" begins on the date claimant's disease forced him or her from the job market. Simply put, the common misconception shared by the commission, the court of appeals magistrate, and Fulton lies in the failure to differentiate between what could have been and what was actually decided in *Lemke*.

{¶30} The commission also distinguishes *Lemke* on the basis that Lemke "did not miss work until the year prior to being declared permanently disabled," while Price "was disabled and paid temporary total disability compensation in 1969." We fail to see the significance of this distinction, unless the commission means to suggest that unlike Lemke, Price's AWW had already been fairly established long before the time of his PTD. But even this distinction is belied by

the fact that Lemke received a 75 percent permanent partial disability award in 1972, which was 18 years before he applied for PTD compensation.

{¶31} Accordingly, although we find that the commission properly adjusted Price's AWW pursuant to the special-circumstances exception in R.C. 4123.61, we agree with the dissenting commissioner that "the holding of *Lemke* applies to this case, regardless of the fact that this is an injury claim and not an occupational disease claim."

{¶32} This brings us to the pivotal issue in this case, which is whether the commission abused its discretion in subjecting Price's PTD award to the statutory maximum limit in effect in 1969. See former R.C. 4123.58, 132 Ohio Laws, Part I, 1420. The commission recognized the injustice in setting the AWW of a claimant who became permanently and totally disabled in 1997 at $56, based on his earnings 29 years earlier. Nevertheless, the commission ordered that Price's PTD award "be paid at the statutory maximum rate pursuant to the provisions of Section 4123.58 of the Revised Code for a 1969 injury claim." In other words, even though substantial justice dictates that for purposes of PTD compensation, Price's AWW be set at $484.44 based on his earnings in 1996, rather than at $56 based on his earnings in 1968, his PTD compensation was nevertheless limited to $56 per week based on a 1969 statutory cap. We find no "substantial justice" in this.

{¶33} Considering that the Workers' Compensation Act must "be liberally construed in favor of employees," R.C. 4123.95, we cannot accept the notion that the $56 per week limitation on PTD awards in former R.C. 4123.58 was intended to override the portion of R.C. 4123.61 that requires the administrator of workers' compensation to use whatever method of wage calculation that "will enable him to do substantial justice to the claimants." Indeed, we find it implausible that the General Assembly intended a $56 per week maximum limit on PTD compensation in effect in 1969 to apply when determining the probable future earning capacity of a claimant rendered permanently and totally disabled 27 years later.

**{¶34}** Instead, we agree with the analysis employed by the Supreme Court of Alaska in an analogous case, *Peck v. Alaska Aeronautical, Inc.* (Alaska 1988), 756 P.2d 282. In that case, claimant Jack Peck received an industrial injury in 1964, when his AWW was $255. After an initial period of temporary disability, Peck returned to his employment and continued working until he was rendered permanently and totally disabled in 1982, when his AWW was $1,294. The court noted that in 1964, Alaska's wage-calculation statute, Alaska Stat. 23.30.220(3), provided for the use of alternative methods when the standard formulas for calculating a claimant's AWW under subsections (1) and (2) could not "reasonably and fairly be applied." The court also noted that the 1964 version of Alaska's PTD statute, Alaska Stat. 23.30.175(b), provided that "[i]n computing compensation for permanent total disability, the average weekly wages are considered to have been not more than $81."

**{¶35}** Alaska's Workers' Compensation Board calculated Peck's PTD benefits based on his 1964 wages and subject to the statutory limits in effect in 1964. In reversing both of these determinations, the court first held that pursuant to Alaska Stat. 23.30.220(3), Peck's AWW should have been calculated on the basis of his earnings in 1982, rather than in 1964. In so doing, the court explained that "Peck has in fact demonstrated a reliable, long-term earning capacity resulting in a significantly higher actual wage. To deny him the benefit of his earning history * * * would be to turn the fairness question on its head." Id., 756 P.2d at 287.

**{¶36}** The court then considered the relationship between sections 220(3) and 175(b) and held that the $81 limit in section 175(b) must also give way in circumstances where its application would be grossly unfair. In so doing, the court explained:

**{¶37}** "We conclude that section 175(b)'s limitation is one that the legislature intended to be applied unless its application would lead to a grossly unfair result. This conclusion is supported by the legislature's expression of

concern in [Alaska Stat.] 23.30.220(3) with alternative ways to calculate awards that 'reasonably represen[t] the annual earning capacity of the injured employee.' * * *

{¶38} "The Board mechanically applied a formula which does not fairly achieve the legislature's goal of awarding injured employees an amount reasonably representing their future earning capacity. The Board's decision is not consistent with * * * the 1964 version of [Alaska Stat.] 23.30.220(3). Under this analysis, because the disparity between Peck's 1964 and 1982 weekly wages is so great, it would be grossly unfair to apply the 1964 version of section 175(b)'s limitation of $81 in order to compensate Peck for his lost earning capacity. Thus we hold that section 175(b) is not to be applied where to do so would negate the legislative intent underlying section 220(3)." Id., 756 P.2d at 288.

{¶39} Likewise, we conclude that applying the $56 per week cap on PTD in this case would undermine the purpose of R.C. 4123.61, i.e., to find a fair basis for award for the loss of compensation.

{¶40} Accordingly, we hold that under the special circumstances of this case, the version of R.C. 4123.58 in effect on the date of Price's industrial injury does not apply in determining his maximum rate of PTD compensation. Instead, Price's PTD award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market.

{¶41} For the foregoing reasons, we affirm the judgment of the court of appeals granting a writ of mandamus ordering the commission to recalculate Price's PTD award applying the statutory cap in R.C. 4123.58 in effect at the time Price was forced from the job market.

Judgment affirmed.

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON, J., dissent.

COOK, J., dissents and joins the reasoning of the Chief Justice's dissenting opinion.

_____

**MOYER, C.J., dissenting.**

{¶42} Not only do I dissent from the majority's clear disregard of the express statutory cap found in former R.C. 4123.58 applicable to the claimant in the case at bar, 132 Ohio Laws, Part I, 1420, but I would also overrule *State ex rel. Lemke v. Brush Wellman, Inc.* (1998), 84 Ohio St.3d 161, 702 N.E.2d 420. Irrespective of the disposition of this cause, however, I strongly urge the General Assembly to review and revise the workers' compensation law applicable to PTD claimants like Price.

{¶43} R.C. 4123.58, as in effect both in 1969 when Price was injured, as well as in 1997 when he ceased working, provided a formula for determining the amount of a claimant's PTD benefits. 132 Ohio Laws, Part I, 1420. At both times the statute provided that PTD benefits are to be calculated according to a mathematical formula using a claimant's AWW as the starting point.

{¶44} Price applied for, and received, temporary total disability compensation shortly after his accident. His AWW was calculated to be $56 at that time. Price did not object to that determination, nor did he urge that special circumstances existed making an AWW of $56 unjust.

{¶45} Over 20 years later, at a time when he was receiving Social Security disability benefits totaling $1,114 per month, Price requested that the Bureau of Workers' Compensation adjust his AWW upward, citing *Lemke*. Inherent in his request was the premise that the "special circumstances" language in the last paragraph of R.C. 4123.61 allows the bureau to revise an established AWW.

{¶46} However, the workers' compensation statutes do not provide for the revision of an established AWW. There simply is no statutory authority for the

commission to do so.  Only the precedent established in *Lemke* provides authority for such revision.

{¶47} I joined the majority in *Lemke*.  However, the case before us illustrates *Lemke*'s impracticality within the context of the highly integrated workers' compensation statutory structure.  Despite our good intention to accomplish a fairer result for Lemke than the statutory scheme provided, it is now clear that we exceeded our proper judicial role and unwisely engaged in legislative rewriting of the workers' compensation law.  We should correct our mistake and turn off the flow of unintended consequences produced by *Lemke*.

{¶48} The majority holds that "Price's PTD award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market."  Specifically, the majority holds that the statutory cap found in R.C. 4123.58 as in effect in 1998, i.e., an amount "equal to sixty-six and two-thirds per cent of the statewide average weekly wage as defined in division (C) of section 4123.62," applies to Price's claim rather than the $56 per week statutory cap in effect in 1969 on the date of his injury.  See 132 Ohio Laws, Part I, 1420.  It reaches this result on the basis of its conclusion that to follow the statutes as written "would undermine the purpose of R.C. 4123.61."

{¶49} In so doing the majority disregards a clear line of precedent that " 'the benefits payable in a compensation claim are those in effect at *the time of the injury*.' " (Emphasis added.) *Thompson v. Indus. Comm.* (1982), 1 Ohio St.3d 244, 250, 1 OBR 265, 438 N.E.2d 1167, quoting Young, Workmen's Compensation Law of Ohio (2d Ed.1971) 313, Section 20.1.  The " 'statutory law in force upon the date the cause of action accrues is the measure of the right, and is not subject to enlargement or diminishment by the Industrial Commission or the courts at any time.' " Id., quoting *Indus. Comm. v. Kamrath* (1928), 118 Ohio St. 1, 4, 160 N.E. 470.  See, also, *State ex rel. Schmersal v. Indus. Comm.* (1944), 142 Ohio St. 477, 478, 27 O.O. 404, 52 N.E.2d 863 (" 'The cause of action of an injured employee

accrues at the time he receives an injury in the course of his employment,' " quoting *Kamrath*, supra, at paragraph three of the syllabus). This court is duty-bound to apply this precedent, and accordingly we should hold that the version of R.C. 4123.58 in effect on the date of an industrial injury applies in determining the maximum PTD compensation due a claimant.

{¶50} R.C. 4123.61, and specifically the "special circumstances" language found in the last paragraph of that statute, is relevant *solely* to a determination of AWW ("In cases where there are special circumstances *under which the average weekly wage cannot justly be determined* by applying this section, the administrator of workers' compensation, *in determining the average weekly wage in such cases*, shall use such method as will enable him to do substantial justice to the claimants" [emphasis added]). R.C. 4123.61 does not expressly or impliedly authorize the administrator to override other sections of the workers' compensation law, such as the statutory cap found in R.C. 4123.58, based on a determination that "special circumstances" exist. To read the statute in this way, as the majority does, broadens the administrator's discretion in determining the amount of a claimant's workers' compensation to such an extent that the statutory benefit formula becomes merely advisory.

{¶51} The rule of law that workers' compensation benefits are determined according to the law in place at the time of injury has long been recognized as causing inequitable results, particularly in the case of claimants whose injuries take many years to evolve into permanent disability. See *Thompson*, 1 Ohio St.3d at 250-251, 1 OBR 265, 438 N.E.2d 1167, and fn. 6. It is also true that PTD benefits are designed to compensate for future economic loss. With some exceptions, the weekly rate derives from the AWW, which, in turn, "is designed to 'find a fair basis for award for the loss of future compensation.' " *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 287, 551 N.E.2d 1265, quoting *State ex rel. Riley v. Indus. Comm.* (1983), 9 Ohio App.3d 71, 73, 9 OBR 90, 458 N.E.2d 428. Ideally,

the PTD rate would reflect the amount of anticipated future losses. Unfortunately, it does not always operate in this manner because the General Assembly has not provided a mechanism to annually adjust the claimant's PTD rate to reflect increases in the cost of living. As a result, claimants injured years ago receive compensation that might well be described as inadequate by today's standards. The problem is most acute for claimants injured before 1974, such as Price, whose compensation is limited by the very low PTD caps then in effect.

**{¶52}** It is critical to remember, however, that regardless of the date of injury, every PTD claimant who receives PTD compensation for many years will eventually have a compensation rate that seems unacceptably low. It is not, therefore, a problem that affects only a declining number of claimants injured before 1974. Increasing an admittedly low rate for one claimant—no matter how well intentioned—ultimately opens the door to all PTD claimants who believe that their rate is too low, i.e., that their workers' compensation is no longer "fair" because of the impact of inflation over time.

**{¶53}** *Lemke* was decided in light of this unfortunate background. Galen Lemke was diagnosed with an occupational disease (not an occupational injury) in 1970. Despite the effects of his disease, he worked until his deteriorating condition forced him from work in 1990. PTD benefits were awarded that same year.

**{¶54}** Like Price, Lemke's PTD rate was based on an AWW figure that was over 20 years old when he applied for PTD benefits. Lemke objected to the commission's calculation of his AWW and PTD compensation, contending that the rate did not fairly reflect the future earnings he would lose. He proposed instead that his AWW be based on his earnings from the year preceding the year of his last day at work. This court agreed and ordered the AWW adjusted pursuant to the "special circumstances" provision of R.C. 4123.61.

**{¶55}** The court found special circumstances within the scope of this statutory provision in that the PTD rate derived from Lemke's date-of-onset AWW

was inadequate at the time of his application for PTD compensation 20 years later, as a result of the passage of time and the impact of inflation. We affirmed a writ of mandamus granted by the court of appeals that ordered the commission "to incorporate in its AWW calculation Lemke's earnings for the year before he could no longer work," and to recompute his PTD. *Lemke*, 84 Ohio St.3d at 164, 702 N.E.2d 420.

{¶56} *Lemke* constituted an attempt to address what, as we have observed above, may well be considered a major flaw in the statutory scheme provided for the workers' compensation system. Lemke's situation prompted a sympathetic response: his PTD rate was unconscionably low, and even his employer encouraged upward adjustment. But in relying on the "special circumstances" exception, *Lemke* inadvertently opened the door to every claimant whose PTD compensation has not kept pace with increases in the cost of living.

{¶57} Both the Industrial Commission and the court of appeals relied upon *Lemke* in ordering that Price's AWW be adjusted upward by using his earnings in the year prior to his application for PTD benefits to calculate his AWW. However, the reasoning in *Lemke* is flawed, and this court should overrule it.

{¶58} *Lemke* has three key flaws: (1) it improperly found the existence of special circumstances justifying an upward adjustment of the AWW pursuant to R.C. 4123.61, (2) it failed to recognize the statutory cap provided by R.C. 4123.58, and (3) it unsuccessfully attempted to distinguish the case on its facts.

{¶59} The special-circumstances provision of R.C. 4123.61 is, by its terms, triggered by an inability to justly determine the AWW by traditional means. Crucial to proper application, however, is this: merely because an AWW later seems unjust does not mean that it was unjust when initially set—the only situation to which the provision relates. However, Lemke received a 1972 permanent partial disability award without objection based on the same AWW he later challenged.

When Lemke's AWW was determined in 1972, there was no allegation that the AWW was unjust. It was only years later that the AWW appeared inadequate.

{¶60} We cited several cases interpreting R.C. 4123.61 as authority in *Lemke*, including *State ex rel. Clark v. Indus. Comm.* (1994), 69 Ohio St.3d 563, 634 N.E.2d 1014, *Wireman*, 49 Ohio St.3d 286, 551 N.E.2d 1265, and *Riley v. Indus. Comm.* (1983), 9 Ohio App.3d 71, 9 OBR 90, 458 N.E.2d 428. All of these cases involved claimants who challenged the AWW that was set in response to their *initial* request for compensation. None involved a situation such as this one, where a claimant's AWW is calculated, without objection, in an amount that, years later, becomes inadequate due to inflation. The *Lemke* court's interpretation of R.C. 4123.61 to allow an adjustment to a previously determined AWW was unprecedented. To the contrary, the law prior to *Lemke* is consistent with the conclusion that once an AWW is determined, and compensation is accepted without objection consistent with that AWW, a later allegation of unjust determination cannot succeed.

{¶61} Application of the special-circumstances provision is precluded for another reason. A finding of special circumstances is generally confined to "uncommon situations." *Wireman,* 49 Ohio St.3d at 287, 551 N.E.2d 1265. As mentioned earlier, an AWW rendered economically inadequate by passing years is not rare.

{¶62} Accordingly, the special-circumstances provision of R.C. 4123.61 should not have been applied in *Lemke*. Nor is it applicable in the case at bar, as Price received substantial temporary total disability compensation immediately following his injury with no allegation at that time that the amount of his AWW was unjust.

{¶63} *Lemke'*s second significant flaw is its failure to discuss the cap on the amount of PTD benefits contained in the PTD statutes. The case at bar brings this flaw into full focus. When Lemke's occupational disease was first diagnosed in

1970, former R.C. 4123.58 awarded PTD at two-thirds of the AWW, not to exceed a statutory maximum of $56 per week. 132 Ohio Laws, Part I, 1420. To the extent that our decision in *Lemke* ordered a calculation of Lemke's PTD based on his 1996 AWW, without regard to any statutory maximum that existed when his AWW was originally set, that order violated the statutory cap provided by the version of R.C. 4123.58 applicable to him.

{¶64} Finally, *Lemke* is problematic because this court's two attempts to distinguish the case on its facts do not withstand scrutiny. Its emphasis on the fact that the case involved an occupational disease and not an injury is irrelevant from a special-circumstances perspective. Id., 84 Ohio St.3d at 164, 702 N.E.2d 420. As the court of appeals in this case observed, a "special circumstances" deviation from the standard AWW formula is not limited to occupational disease claimants. If a rate is unsustainable for someone with an occupational disease, it is unsustainable for someone with an industrial injury.

{¶65} Nor does the fact that Lemke persisted in working long after his diagnosis provide a valid distinction. The court wrote that "[a]n employee who is able to earn a living only by persevering for more than eighteen years while losing ground to insidious occupational disease should be compensated equitably for his or her disability." Id., 84 Ohio St.3d at 164, 702 N.E.2d 420. There is, however, no substantive reason why Lemke's situation was more deserving of a rate increase than a claimant so severely disabled from the outset that the chance to persevere was immediately and permanently foreclosed.

{¶66} Consequently, *Lemke's* inference that an AWW may be recalculated to achieve a "fair" benefit amount has inadvertently become both an invitation and precedent for all claimants who believe that the amount of their compensation has become insufficient over time. This almost certainly will have significant negative implications for the State Insurance Fund.

**{¶67}** Relief is available to some workers receiving PTD subject to pre-1974 statutory caps. Qualified recipients of PTD compensation lower than the amount fixed in R.C. 4123.412 may receive benefits from the Disabled Workers' Relief Fund ("DWRF") established by R.C. 4123.411 et seq. Fulton notes in his treatise that the General Assembly created the DWRF subsidy based upon the recognition that "a large number of permanently and totally disabled claimants were receiving low levels of compensation, because benefits payable in a compensation claim are limited to those in effect at the time of injury, and inflation tended to victimize the recipients of such continuing benefits." Fulton, supra, at 318, Chapter 10.6. A PTD compensation recipient qualifies for a DWRF benefit if his workers' compensation benefit, when combined with Social Security Act disability payments, falls below a statutorily mandated minimum amount. R.C. 4123.412. That amount as relevant to Price was $342 a month. However, Price's monthly Social Security benefit was $1,114 at the time of his application for PTD.

**{¶68}** I therefore would overrule *Lemke*, while strongly urging the General Assembly to again consider the impact of current law on workers' compensation recipients in Price's position. The problem of inflexible PTD rates should be addressed and resolved by the legislative branch of government—not by this court.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

————————————

Kearns Co., L.P.A., and Michael A. Kearns, for appellee.

Betty D. Montgomery, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellants.

————————————