DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Tina Stevens, the widow of Charles Stevens ("decedent"), has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate an order denying her request to reset decedent's average weekly wage ("AWW") on the basis of decedent's earnings during the year prior to his death, and to enter an order resetting AWW based upon his earnings during the year prior to his death.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} In her objections, relator raises essentially the same argument she presented before the magistrate, i.e., that this case is analogous to the Ohio Supreme Court's decision in State ex rel. Price v. Cent. Serv.,Inc., 97 Ohio St.3d 245, 2002-Ohio-6397. The magistrate, however, concluded that State ex rel. Kingv. Indus. Comm., 99 Ohio St.3d 85, 2003-Ohio-2451, a case post-dating Price, was controlling. For the reasons set forth in the magistrate's decision, we agree with the magistrate that the controlling authority is King.
 {¶ 4} Based upon this court's independent review, pursuant to Civ.R. 53, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Klatt and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Tina Stevens, Widow of :
Charles Stevens, Deceased, :
 Relator, :
v. : No. 04AP-919
 :
Industrial Commission of Ohio: (REGULAR CALENDAR)
and City of Columbus, Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on February 28, 2005 Portman, Foley Flint LLP, and Frederic A. Portman, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} Relator, Tina Stevens, is the wholly dependent widow of Charles Stevens ("decedent") who died February 2, 1997, as a result of an industrial injury that occurred May 8, 1982. In this original action, relator requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her request to reset decedent's average weekly wage ("AWW") on the basis of his earnings during the year prior to his death, and to enter an order resetting AWW on the basis of decedent's earnings during the year prior to his death.
Findings of Fact:
 {¶ 6} 1. On May 8, 1982, decedent sustained an industrial injury while employed as a police officer with respondent city of Columbus. The industrial claim is allowed for: "myocardial infarction," and is assigned claim number PEL16506.
 {¶ 7} 2. Decedent's AWW was set at $408.75 based upon his earnings during the year prior to the date of his May 8, 1982 industrial injury.
 {¶ 8} 3. Decedent returned to work as a police officer for the city of Columbus following his industrial injury. He continued to work as a police officer for the city until January 1992.
 {¶ 9} 4. Thereafter, decedent became the Police Chief of Madison Township. During the 1996 calendar year, decedent's gross wages were $58,354.25. Dividing decedent's gross wages earned during the year 1996 by 52 weeks, decedent's AWW based upon his date of death would approximate $1,122.
 {¶ 10} 5. On February 2, 1997, decedent suffered a fatal myocardial infarction as a result of his industrial injury of May 8, 1982.
 {¶ 11} 6. Thereafter, relator, Tina Stevens, filed a death claim pursuant to R.C. 4123.59 on behalf of herself and her four children.
 {¶ 12} 7. On December 4, 1997, the Ohio Bureau of Workers' Compensation ("bureau") issued an order allowing the death claim. The bureau determined that relator and her four children were wholly dependent upon decedent at the time of his death. Relator and her children were apportioned a weekly death award of $408.75 which is an amount equal to decedent's AWW based upon his date of injury.
 {¶ 13} 8. On March 17, 2004, over six years later, the bureau issued a corrected order. The corrected order states that the prior order incorrectly set the total weekly death award at $408.75 and that the correct amount of the weekly death award is $272.50, which is 66 and two-thirds percent of decedent's AWW. ($408.75 x 66 and 2/3% = $272.50.)
 {¶ 14} 9. Relator administratively appealed the bureau's March 17, 2004 corrected order. On appeal, relator also requested that decedent's AWW be reset. Following a May 12, 2004 hearing, a district hearing officer ("DHO") issued an order affirming the bureau's March 17, 2004 order and denying relator's request to reset decedent's AWW. The May 12, 2004 DHO's order explains that the December 4, 1997 bureau order contains a clear mistake of law because R.C. 4123.59 provides that death benefits are to be paid at a weekly rate of 66 and two-thirds percent of AWW. The DHO's order also explains why a resetting of AWW is not justified:
Widow-claimant's counsel argues that the [State exrel. Price v. Cent. Serv., Inc., 97 Ohio St.3d 245,2002-Ohio-6397] and [State ex rel. Lemke v. BrushWellman, Inc. (1998), 84 Ohio St.3d 161] line of cases warrant a rate of death benefits equal to the statutory maximum for a 1997 death. The decedent continued to work as a police office[r] following the 05/08/1982 injury and was earning significantly more income prior to his death than prior [to] the 05/08/1982 injury. In fact, the Madison Township township [sic] clerk (where the decedent was working as a chief of police immediately prior to his death) has provided documentation that the decedent earned $58,354.25 in 1996 (the last full calendar year prior to his death). Irrespective of the fact the decedent's average weekly wage for the year prior to his death was significantly higher than the $408.75 average weekly wage in the year prior to 05/08/1982, the District Hearing Officer declines to set the death benefit rate at $521.00 (1997 death maximum). The claim for death benefits was filed and allowed in this 05/08/1982 injury claim — not as a result of a distinct, new compensable injury in 1997. Thus, the statutory death benefit rate scheme detailed by ORC 4123.59
establishes the average weekly wage for the year prior to the underlying injury — not the date of death — is used to establish the death benefit rate. Given the fact that ORC 4123.59 established minimum and maximum rates based on the date of death — not date of injury — the District Hearing Officer determines the legislature has expressly provided a statutory scheme which provides a "remedy" and/or takes into account the situation where a significant time period exists between and [sic] injury and subsequent death which results in a substantial disparity between pre-injury versus pre-death earnings. Furthermore, the District Hearing Officer notes that neither Price or Lemke are death benefit cases. These cases are permanent total disability cases. Given the different statutory schemes regarding compensation rates between ORC 4123.58 and ORC 4123.59; in conjunction with the fact ORC 4123.59 creates a new cause of action for dependents, the District Hearing Officer determines neither the Price or Lemke decisions support the widow-claimant counsel's request to reset the death benefit rate at $521.00.
For the foregoing reasons, the 03/18/2004 [sic] Bureau of Workers' Compensation order is affirmed.
 {¶ 15} 10. Relator administratively appealed the DHO's order of May 12, 2004.
 {¶ 16} 11. Following a June 22, 2004 hearing, a staff hearing officer ("SHO") issued an order stating:
The order of the District Hearing Officer, from the hearing dated 05/12/2004, is affirmed.
Claimant's motion seeking the application of 1997 increase of compensation and the wages being paid to decedent in the period leading up to his death in 1997 remains denied. In substance, the widow-claimant seeks the application of the Price and Lemke doctrine to a death claim. Revised Code Section 4123.59 plainly sets out the procedure for determining the rate of the compensation to be paid in claims where an individual suffers an injury and dies at a later time. The decisions cited provide a rule in cases where an individual continues to work and later became permanently and totally disabled. By their terms, neither of the decisions is applicable to a death claim. The Staff Hearing Officer does not find it to be appropriate to expand these decisions beyond their plain terms and apply them to a different type of compensation. Consequently, the claimant's motion is denied, finding that the request is inconsistent with Revised Code Section 4123.59.
 {¶ 17} 12. On July 10, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of June 22, 2004.
 {¶ 18} 13. On September 8, 2004, relator, Tina Stevens, filed this mandamus ction.
Conclusions of Law:
 {¶ 19} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 20} R.C. 4123.59 provides:
In case an injury to * * * an employee causes his death, benefits shall be in the amount and to the persons following:
* * *
(B) If there are wholly dependent persons at the time of the death, the weekly payment is sixty-six and two-thirds percent of the average weekly wage, but not to exceed a maximum aggregate amount of weekly compensation which is equal to sixty-six and two-thirds per cent of the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code, and not in any event less than a minimum amount of weekly compensation which is equal to fifty per cent of the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code, regardless of the average weekly wage; provided however, that if the death is due to injury received or occupational disease first diagnosed after January 1, 1976, the weekly payment is sixty-six and two-thirds per cent of the average weekly wage but not to exceed a maximum aggregate amount of weekly compensation which is equal to the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code[.] * * *
R.C. 4123.61 provides:
In death * * * claims, the * * * decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. * * *
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 21} The parties have stipulated to a table of compensation rates for various types of compensation, including death benefits. (Stipulation of Evidence, Ex. 10.) The table shows the maximum and minimum weekly death benefit for the year in which the death occurred. For a death occurring in calendar year 1997, the maximum weekly benefit is $521 and the minimum weekly benefit is $260.50. The maximum and minimum for any given year are based upon the statewide average weekly wage ("SAWW") for that year. Presumably, $521 is the SAWW for 1997. $260.50 is 50 percent of the SAWW for 1997.
 {¶ 22} Here, decedent's AWW based on earnings during the year prior to his 1982 industrial injury is $408.75. Pursuant to R.C. 4123.59, the commission set the weekly death benefit at $272.50 which is 66 and two-thirds percent of $408.75. Significantly, the magistrate notes that $272.50 is above the $260.50 minimum weekly benefit for a death occurring in 1997, i.e., it is above 50 percent of SAWW for 1997.
 {¶ 23} Relator relies here on State ex rel. Price v.Cent. Serv., Inc., 97 Ohio St.3d 245, 2002-Ohio-6397, to argue that there are "special circumstances" in her case that justify resetting decedent's AWW based upon his earnings during the year prior to his death. According to relator, if the commission were to reset decedent's AWW based upon his date of death rather than his date of injury, AWW would exceed the maximum of $521 for a 1997 death. Thus, if the commission were to reset AWW as relator requests, the weekly death benefit would be $521 rather than $272.50.
 {¶ 24} According to relator, "special circumstances" exist because decedent continued to work for almost 15 years after his 1982 industrial injury during which his earnings substantially increased. His weekly wage increased from $408.75 to approximately $1,122 in 1997.
 {¶ 25} Relator's reliance upon Price is misplaced. Relator has not shown "special circumstances" under R.C. 4123.61 to justify the resetting of decedent's AWW to obtain a higher weekly rate for the death award.
 {¶ 26} State ex rel. King v. Indus. Comm.,99 Ohio St.3d 85, 2003-Ohio-2451, a case post-datingPrice, is controlling on the issue relator presents here.
 {¶ 27} In King, the decedent was industrially injured in 1974 and his AWW was set at $434.92. A declaration of permanent total disability followed. Thereafter, he received permanent total disability benefits until his injury caused his death in 2000, some 22 years later. The death claim award was set at a weekly rate of $294.50 to conform to the minimum statutory benefit in the year 2000 as set by R.C. 4123.59(B).
 {¶ 28} In King, decedent's widow sought to increase the weekly death benefit to the maximum rate for decedent's year of death. The King court rejected the argument that decedent's widow was statutorily entitled to the maximum benefits. The relator in King also argued, as the relator argues here, that "special circumstances" justified a resetting of the decedent's AWW. The King court states, at ¶ 16-19:
Finally, widow-claimant proposes that the lengthy period between injury and death in this case constitutes "special circumstances" pursuant to R.C. 4123.61 so as to permit recalculation of the benefit amount. "`Special circumstances' is undefined, but has generally been confined to uncommon situations." State ex rel. Wiremanv. Indus. Comm. (1990), 49 Ohio St.3d 286, 288 * * *.
Situations that have supported a "special circumstance" award include the setting of the initial AWW when the claimant was 18 years old with a low-paying job but proved capable of much higher-paying employment than that upon which AWW was set, State ex rel. Baileyv. Indus. Comm. (Aug. 29, 1995), Franklin App. No. 94APD09-1284, 1995 WL 507462, cited in State ex rel.Gillette v. Indus. Comm. (2002), 95 Ohio St.3d 20, 22 * * *; an AWW based on the short time (four weeks) between the date of employment and the injury when determined to be unjust in light of claimant's extremely light schedule and her past demonstrated earning power, Stateex rel. Clark v. Indus. Comm. (1994), 69 Ohio St.3d 563
* * *; the commission's inclusion of 21 weeks when claimant was operating a gas station at a net loss,Smith v. Indus. Comm. (1986), 25 Ohio St.3d 25 * * *; and an AWW based on the year preceding a 1969 injury subject to R.C. 4123.58's cap as it existed in 1969 where claimant worked for an additional 26 years at a much higher salary, State ex rel. Price v. Cent. Serv.Inc., 97 Ohio St.3d 245, 2002-Ohio-6397 * * *.
In State ex rel. Cawthorn v. Indus. Comm. (1997),78 Ohio St.3d 112, 114 * * *, this court noted that R.C. 4123.61 "provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings." Moreover, "special circumstances can be invoked only if the standard calculation yields a result that is substantially unjust." Id. at 115[.] * * *
No "special circumstances" as that term has been interpreted by this court exist here. No unusual factors affected the fairness of decedent's original AWW computation. Though decedent's AWW was based upon his earnings many years prior to his death, the actual award is based on a current figure, the SAWW for the year 2000. We do not assess this to be one of the "most exceptional cases" justifying a deviation from the standard application of R.C. 4123.59(B).
 {¶ 29} As in King, although the instant decedent's AWW is based upon his earnings many years prior to his death, the actual award is based on a current figure, the SAWW for the year 1997. Thus, "special circumstances" do not exist. King.
 {¶ 30} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.