DECISION
 IN MANDAMUS {¶ 1} Philip Davis filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its order which set his average weekly wage ("AWW") at $572.73 and his full weekly wage ("FWW") at $560.52. Mr. *Page 2 
Davis requests that the commission be compelled to set both his AWW and FWW at higher figures.
 {¶ 2} In accord with the local rule, this case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we refuse to issue the requested writ.
 {¶ 3} No party has filed objections to the magistrate's decision. The case is now before the court for review.
 {¶ 4} In cases where no objections are filed, the court may adopt the magistrate's decision unless the court determines that there is an error of law or other defect on the face of the magistrate's decision. See Civ.R. 53(D)(4)(c).
 {¶ 5} No error of law or other defect is present on the face of the magistrate's decision. We, therefore, adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we deny the request for a writ of mandamus.
Writ of mandamus denied.
 BROWN and McGRATH, JJ., concur. *Page 3 
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 6} Relator, Philip Davis, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which set relator's average weekly wage ("AWW") at *Page 4 
$572.73, and his full weekly wage ("FWW") at $560.52, and ordering the commission to find that his AWW should be set at $946.11, and that his FWW should be set at $820.47, based upon the special circumstances provision of R.C. 4123.61.
Findings of Fact: {¶ 7} 1. Relator has sustained two separate injuries during the course of his employment with respondent Denman Tire Corporation ("employer"). The first injury occurred in January 1999 and was assigned claim number #99-314434. The second injury, which is relevant to this mandamus action, was sustained on April 4, 2002, and has been allowed for the following conditions: "right shoulder rotator cuff tear; right shoulder strain/sprain."
 {¶ 8} 2. As a result of the 1999 injury, relator was not able to return to his original position of employment. Relator was released to light-duty work for no more than 40 hours per week.
 {¶ 9} 3. At the time of his 1999 injury, relator was employed as a "Compounder." When he returned to work in May 2001, he returned to work as a "Lab Technician."
 {¶ 10} 4. Following his April 2002 injury, relator filed a motion requesting the following:
 * * * [T]hat his Full Weekly Wage be reset at $820.47 and the Average Weekly Wage be reset at $946.11 based on his earnings which were made during 1998 and 1999. Claimant was restricted to only work 40 hours a week, per his physician of record, as a result of the 1999 injury; therefore, as a result of this restriction lost wages previously earned prior to the 1999 injury. *Page 5 
 {¶ 11} In support, relator attached documentation which included the following: the December 24, 2003 Social Security Statement showing his yearly earnings; pay stubs from his employer; and a print-out of wages from his employer.
 {¶ 12} 5. The Ohio Bureau of Workers' Compensation issued an order mailed March 8, 2005, and set relator's FWW at $820.47 and his AWW at $946.11 based upon his earnings for 1998 and 1999.
 {¶ 13} 6. The employer appealed and the matter was heard before a district hearing officer ("DHO") on April 29, 2005. The DHO vacated the prior order from the administrator and set relator's AWW as follows:
 The average weekly wage is set at $572.73 based on total earnings of $22,909.12 divided by 40 weeks worked. Twelve weeks were excluded from the calculation due to unemployment beyond the injured worker's control.
 {¶ 14} 7. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on June 15, 2005. The SHO set relator's AWW at $572.73 by dividing his total earnings of $22,909.12 by 40 weeks. The SHO excluded 12 weeks of unemployment which were beyond relator's control. The SHO also set relator's FWW at $560.52 based upon his wages earned in the last week immediately prior to the April 2002 injury. The SHO found that those wages were higher than the six-week average which relator earned prior to the injury. Thereafter, in addressing relator's argument that the commission should set his AWW and FWW at the same rate as they were set in his 1999 claim, the SHO denied relator's request as follows:
 In setting the Full and Average Weekly Wages as above, the Staff Hearing Officer rejects the Claimant's contention the [sic] special circumstances exist that would warrant adjusting the *Page 6 
Full and Average Weekly Wages to those settings as made and determined under Claim #99-314434.
 By way of clarification, the Injured Worker maintains that the wages here should be set identical to the wages in Claim #99-314434 for the reason that Claimant, due to a 1999 injury, was never able to return to his former position of employment as a Compounder. The Injured Worker maintains that if he was still employed as a Compounder he would be able to work overtime and his wages would be greatly increased.
 However, the Injured Worker has failed to establish by preponderance of the evidence that persons employed as a Compounder with this employer do work increased hours i.e. overtime, and to that end, the Injured Worker has not presented any type of wage verification or documentation as to what a Compounder does make at this time.
 Therefore, given the absence of this wage documentation/-verification the Staff Hearing Officer is unable to ascertain the validity of Claimant's contention.
 Given this deficiency, the Staff Hearing Officer concludes that the Injured Worker has failed to establish by preponderance of the evidence that special circumstances exist as described above, that would warrant setting the Full and Average Weekly Wages at the same amounts as they are set in Claim #99-314434. As such, the request to do so is hereby denied. The wages are to remain set as ordered above.
 {¶ 15} 8. Relator appealed and submitted additional documentation including his own affidavit asserting that, but for the fact that he had been forced to take a light-duty position, he would have taken advantage of all the available overtime and made significantly more money. Relator also attached an affidavit from a co-worker who worked as a compounder for the employer and who indicated that overtime was available.
 {¶ 16} 9. By order mailed July 13, 2005, the commission refused relator's appeal.
 {¶ 17} 10. Thereafter, relator filed the instant mandamus action in this court. *Page 7 
Conclusions of Law: {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 19} In the present case, it is this magistrate's conclusion that relator has not shown a clear legal right to the relief requested as more fully explained below.
 {¶ 20} R.C. 4123.61 provides for the computation of the AWW and states, in pertinent part, as follows:
 The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
 **
 In death, permanent total disability, permanent partial disability claims, and impairment of earnings claims, the claimant's or the decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which *Page 8 
compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
 In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 21} In calculating the AWW, two considerations dominate: (1) the AWW must do substantial justice to the claimant; and (2) it should not provide a windfall. See State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286. In State ex rel. Valley Pontiac Co. v. Indus. Comm.
(1991), 71 Ohio App.3d 388, 393, this court specifically noted as follows:
 The term "special circumstances," though undefined, has generally been applied in cases involving uncommon situations. * * * Generally, "the average weekly wage should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury." [State ex rel. Erkard v. Indus. Comm. (1988), 55 Ohio App.3d 186], 188[.] * * *
 {¶ 22} In the present case, relator essentially argues that if he had not sustained his first injury in 1999, then he would be earning more money now than he actually is. Because of that, relator contends that the commission abused its discretion by not considering his wages prior to his 1999 injury to determine his AWW after he sustained his second injury in 2002. Relator cites State ex rel. Price v. Cent. Serv.,Inc., 97 Ohio St.3d 245, 2002-Ohio-6397, and argues that special circumstances do exist when a claimant's AWW is based upon an obviously unjust barometer of the claimant's *Page 9 
prospective future average wages. However, Price was overruled inState ex rel. Stevens v. Indus. Comm., 110 Ohio St.3d 32,2006-Ohio-3456, wherein the Supreme Court of Ohio held that a natural increase in earnings over the course of time does not constitute a "special circumstance" under R.C. 4123.61 sufficient to justify the recalculation of an individual's AWW.
 {¶ 23} Relator also cites State ex rel. Clark v. Indus. Comm. (1994),69 Ohio St.3d 563, and argues that the Clark case is similar to the facts of this case and supports his request for a writ of mandamus. However, upon review of the Clark decision, this magistrate disagrees. In Clark, the claimant had just returned to the workforce a few weeks prior to her injury and was working only a few hours per week to see how her granddaughter would adjust to her absence. Following her injury, the claimant obtained full-time employment. Her AWW was originally set at $20 per week, based upon her earnings in the year preceding her date of injury. Upon review, the court determined that the "special circumstances" of R.C. 4123.61 should have been applied due to the proximity of claimant's date of injury and her reentry into the workforce.
 {¶ 24} The rationale from Clark is not present here. Yes, relator had been injured in 1999 and his AWW was originally calculated as the basis for compensation in that claim. Thereafter, relator returned to the workforce, albeit in a different position where he was restricted to working no more than 40 hours per week. While working in this other job, relator sustained another injury and the commission assigned a new claim number and set his AWW in that claim based upon his earnings in that new job. Although relator speculates that he would have been making more money if he could *Page 10 
have remained in his other job because he could have taken advantage of overtime hours, that speculation is not a reason for this court to find that the commission abused its discretion in not finding that to constitute a special circumstance. Furthermore, the evidence to which relator points in support of his contention that he would have been making more money as he would have been able to work overtime was not submitted to the SHO for consideration. As such, this court cannot now review that evidence when determining whether the commission abused its discretion.
 {¶ 25} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in setting his AWW by looking at his earnings in the year prior to his 2002 injury and this court should deny relator's request for a writ of mandamus.
 Stephanie Bisca Brooks STEPHANIE BISCA BROOKS MAGISTRATE *Page 1