DECISION
{¶ 1} Relator, Cynthia D. Cooper, has requested a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her motion to reset an average weekly wage ("AWW"), and to enter an order granting her motion.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section M, Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that the requested writ of mandamus should be denied.
 {¶ 3} Relator objects to the magistrate's decision asserting that it is incorrect as a matter of law for the following reasons: (1) it is contrary to both R.C. 4123.61, which requires that the AWW be set using a method that will do substantial justice to the claimant, and R.C. 4123.93, which requires that R.C. 4123.61 be liberally construed in favor of employees; (2) the magistrate erroneously found that "relator's weekly wage approximately doubled during the five year period" that she worked after the industrial injury but that this was "not an uncommon occurrence in the workforce" constituting special circumstances; (3) the magistrate erroneously found that the AWW of "$251.88, while low, is not on its face substantially unjust"; and (4) the magistrate incorrectly found that relator failed to show special circumstances and that her AWW is substantially unjust.
 {¶ 4} The factual findings of the magistrate are not in dispute. The pertinent findings are that relator was injured in June 1993, with an AWW of $251.88. She continued to work another five years until July 1998, when her AWW was allegedly $514.22; thus, relator's weekly wage approximately doubled during the five-year period. Parenthetically, as the magistrate noted, even if relator could show that she is entitled to an adjusted AWW, the new permanent total disability rate would be calculated at 66 2/3 percent of AWW, subject to a maximum and minimum which would increase her compensation rate much less than 100 percent.
 {¶ 5} All of the objections center around the interpretation to be given to the facts in this case by the application of the Ohio Supreme Court case of State ex rel. Price v. Cent. Serv. Inc., 97 Ohio St.3d 245,2002-Ohio-6397. We need not restate the facts in Price, as those facts were accurately reviewed by our magistrate. Obviously, the facts in this case are quite distinguishable from those in the Price case where the disparity and AWW was grossly greater than in the present case.
 {¶ 6} In analyzing the per curiam majority opinion in Price, we find that the court held that the special-circumstances exception set forth in R.C. 4123.61, which is designed to do substantial justice to the claimant for payment of the loss of future compensation, is not to be based on a mechanical representation of the claimant's earnings in some arbitrary past period but to be used only in circumstances where the application of the usual rule would lead to a grossly unfair result. That situation was found to exist in the Price case. The court did not alter the usual basis for considering AWW in the future where there was simply an increase in AWW sometime thereafter. To do that, which the Price court did not do, would upset the whole legislative scheme for compensation of AWW in the future. Thus, we find that Price does not support applying special circumstances to this case, as the result is not "grossly unfair."
 {¶ 7} Relator also points to State ex rel. Gillette v. Indus. Comm.
(2002), 95 Ohio St.3d 20, a case which pre-dates Price. In Gillette, the court denied a writ of mandamus and reset Gillette's AWW based on the fact that his earnings had increased in the ten years he had worked since his injury. However, in Gillette, the court stated that the "special circumstances provision in R.C. 4123.61 has generally been confined to uncommon situations." Id. at 22. The court held that increasing wages over time is not uncommon and does not constitute a "special circumstance."
 {¶ 8} The question is whether the language in Gillette, a case that pre-dated Price, leads to the conclusion that any "uncommon circumstance" is sufficient to lead to the further conclusion that application of the usual AWW rule is grossly unfair to the claimant. We believe, as did our magistrate and the commission, that a situation that is merely uncommon without being a disparity of the magnitude that constitutes gross unfairness is insufficient to invoke the provision of R.C. 4123.61. While we agree that, in ordinary parlance, doubling of a person's salary in five years is uncommon, we do not think that a wage increase that is greater than a hypothetical or actual average applicable to wage earners as a whole is sufficient in itself to invoke R.C. 4123.61.
 {¶ 9} Relator's objections are overruled. This court adopts the magistrate's decision as it's own, and relator's request for a writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Petree and McGrath, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Cynthia D. Cooper, :
Relator, :
 :
v. : No. 04AP-706
Industrial Commission of Ohio and : (REGULAR CALENDAR)
Franklin County Commissioners, :
 :
 Respondents. :

MAGISTRATE'S DECISION
Rendered on February 28, 2005.
Wade Law Office LLC, and E. Roberta Wade, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
Ron O'Brien, Prosecuting Attorney, Denise L. Hanson, for respondent Franklin County Commissioners.
 IN MANDAMUS {¶ 10} In this original action, relator, Cynthia D. Cooper, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her motion to reset her average weekly wage ("AWW"), and to enter an order granting her motion.
Findings of Fact:
 {¶ 11} 1. On June 28, 1993, relator sustained an industrial injury while employed as a bus driver for respondent Franklin County Commissioners. The industrial claim is assigned claim number PEL221560.
 {¶ 12} 2. In May 1994, a claims examiner of the Ohio Bureau of Workers' Compensation ("bureau") calculated AWW to be $251.88 based upon wage information for the year prior to the date of injury.
 {¶ 13} 3. Relator filed an application for permanent total disability ("PTD") compensation indicating that July 2, 1998 was her last day of work. Apparently, relator was awarded PTD compensation starting January 18, 2000. The bureau determined that PTD compensation is payable at a weekly rate of $230. This rate was calculated by multiplying AWW by 66 and two-thirds percent ($251.88 x 66 and 2/3% = $167.92) and adjusting that amount upward to the 1993 minimum rate for PTD awards. The minimum PTD rate of $230 is equal to 50 percent of the state wide average weekly wage for 1993. R.C. 4123.62.
 {¶ 14} 4. On September 15, 2003, relator moved that her AWW be reset at $514.22 based upon her affidavit and State ex rel. Price v. Cent.Serv., Inc., 97 Ohio St.3d 245, 2002-Ohio-6397. Relator's affidavit avers:
I was injured on 6/28/1993 while employed by Franklin County as a bus driver.
In February 1994, I had my first back surgery due to this 6/28/1993 industrial injury.
I returned to work, working both for Franklin County and for another part-time employer.
In August 1998, I had my second back surgery due to this industrial injury.
I last worked 7/2/1998.
My earnings for 1997, my last full year of employment, totaled $26,739.66, making my average weekly wage (AWW) $514.22.
Attached is a true copy of my Social Security earnings history.
 {¶ 15} 5. Following a December 29, 2003 hearing, a staff hearing officer ("SHO") issued an order denying relator's motion. The SHO's order states:
The injured worker's motion requests that the Average Weekly Wage be reset at $514.22 in order to do substantial justice in setting claimant's permanent total disability rate, and that motion then states the Price
case as evidence to support the motion. The Staff Hearing Officer has reviewed the case of State ex rel. Price v. Cent Service Inc.97 Ohio St.3d 245 (2002) and finds that the facts of the Price case are distinguishable from the facts of this case. In the Price case, the injured worker was initially injured in 1969, but continued to work for 26 years until that allowed injured [sic] forced him from the work place. Because of the significant variation in earnings between those in 1969, and those when the injured worker was forced from the work force 26 years later, the court adjusted the wages so as to provide for these "extraordinary circumstances." In this case, the Staff Hearing Officer does not find extraordinary circumstances. Most significantly, the injured worker's last date worked was in 1998, only five years after her original injury.
A review of the file demonstrates to the Staff Hearing Officer that the issue of permanent total disability rate has been raised by the injured worker previously. On 12/20/2000, she filed a C-86 disputing the permanent total disability rate, which was set per 11/28/2000 BWC order at the statutory minimum permanent total disability rate for 1993 of $230.00. That C-86 filed by the injured worker on 12/20/2000 was dismissed per ex parte order of the Industrial Commission dated 04/16/2001. As such, the statutory permanent total disability rate remains at $230.00, and the Staff Hearing Officer finds that the Price case is distinguishable by mere length of time in the Price case of 26 years between the date of injury and the date last worked, and the five years that as in this case between the date of injury of 1993 and the last date worked of 1998.
 {¶ 16} 6. On March 11, 2004, the commission mailed an order denying relator's request for reconsideration of the December 29, 2003 SHO's order.
 {¶ 17} 7. On July 14, 2004, relator, Cynthia D. Cooper, filed this mandamus action.
Conclusions of Law:
 {¶ 18} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 19} In Price, the claimant, Patrick D. Price, was severely injured on December 22, 1969. He was unable to work for over a year and received temporary total disability ("TTD") compensation based on an AWW of $56, which was calculated on the basis of Price's earnings for the year preceding his injury in accordance with the standard method under R.C.4123.61.
 {¶ 20} Price eventually returned to his employment and continued working at higher salaries for over 26 additional years, despite numerous hospitalizations, surgeries and continuing degradation of his health. He last worked on March 31, 1997. His AWW based on his earnings in 1996 was $484.44.
 {¶ 21} On December 13, 1997, Price applied for PTD compensation. In March 1999, PTD compensation was awarded at a rate of $45.50 per week. This rate was computed by multiplying Price's 1968 AWW of $56 by 66 and two-thirds percent, and then raising that amount to the statutory minimum rate for PTD awards that was in effect in 1969. Price's PTD award was then reduced to $36.40 per week after he applied for and was granted a lump-sum payment for attorney fees.
 {¶ 22} Price moved for an upward adjustment of his AWW and a recalculation of his weekly PTD payments in order to reflect his earnings in 1996, the last full year that he worked before his industrial injury forced him from the job market. Price relied upon the "special circumstances" provision of R.C. 4123.61, and State ex rel. Lemke v.Brush Wellman, Inc. (1998), 84 Ohio St.3d 161.
 {¶ 23} Finding "extraordinary circumstances," the SHO granted Price's motion, reset his AWW at $484.44, and ordered that Price's PTD rate be readjusted in light of the new AWW.
 {¶ 24} In a split decision, the commission modified the SHO's order. The commission increased Price's AWW from $56 to $484.44, but then limited the PTD award to a maximum rate of $56 per week.
 {¶ 25} The Price court stated, at ¶ 12:
* * * The issue is simply whether Price's PTD award is subject to the statutory limit in effect on the date of his injury. To determine this issue, we need consider the relationship between only R.C. 4123.58 and4123.61 as they both existed in 1969, and decide whether the $56 limit in former R.C. 4123.58, like the standard formula for determining AWW in R.C. 4123.61, must also give way in light of the "special circumstances" of this case. * * *
 {¶ 26} After a lengthy discussion of its previous decision in Lemke,
the Price court found that the commission properly adjusted Price's AWW pursuant to the "special circumstances" exception in R.C. 4123.61. ThePrice court then states, at ¶ 33-34, 40-41:
This brings us to the pivotal issue in this case, which is whether the commission abused its discretion in subjecting Price's PTD award to the statutory maximum limit in effect in 1969. See former R.C. 4123.58, 132 Ohio Laws, Part I, 1420. The commission recognized the injustice in setting the AWW of a claimant who became permanently and totally disabled in 1997 at $56, based on his earnings 29 years earlier. Nevertheless, the commission ordered that Price's PTD award "be paid at the statutory maximum rate pursuant to the provisions of Section 4123.58 of the Revised Code for a 1969 injury claim." In other words, even though substantial justice dictates that for purposes of PTD compensation, Price's AWW be set at $484.44 based on his earnings in 1996, rather than at $56 based on his earnings in 1968, his PTD compensation was nevertheless limited to $56 per week based on a 1969 statutory cap. We find no "substantial justice" in this.
Considering that the Workers' Compensation Act must "be liberally construed in favor of employees," R.C. 4123.95, we cannot accept the notion that the $56 per week limitation on PTD awards in former R.C.4123.58 was intended to override the portion of R.C. 4123.61 that requires the administrator of workers' compensation to use whatever method of wage calculation that "will enable him to do substantial justice to the claimants." Indeed, we find it implausible that the General Assembly intended a $56 per week maximum limit on PTD compensation in effect in 1969 to apply when determining the probable future earning capacity of a claimant rendered permanently and totally disabled 27 years later.
* * *
* * * [W]e conclude that applying the $56 per week cap on PTD in this case would undermine the purpose of R.C. 4123.61, i.e., to find a fair basis for award for the loss of compensation.
Accordingly, we hold that under the special circumstances of this case, the version of R.C. 4123.58 in effect on the date of Price's industrial injury does not apply in determining his maximum rate of PTD compensation. Instead, Price's PTD award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market.
 {¶ 27} Thus, the Price court (1) upheld the commission's resetting of AWW at $484.44 based upon Price's 1996 earnings under the "special circumstances" provision of R.C. 4123.61, and (2) held that the statutory cap found at former R.C. 4123.58 was rendered inapplicable by the application of R.C. 4123.61's "special circumstances" provision in effect in 1969.
 {¶ 28} In State ex rel. Gillette v. Indus. Comm., 95 Ohio St.3d 20,2002-Ohio-1492, a case that predates Price, the court distinguishedLemke; however, Gillette is instructive here.
 {¶ 29} In Gillette, the claimant, Glenn R. Gillette, injured his knee on September 10, 1990, and his AWW was set at $379.20 based upon his earnings for the year prior to the injury. Gillette had surgery on September 24, 1990, and returned to his job a short time later after collecting benefits from his employer in lieu of TTD compensation.
 {¶ 30} Gillette worked without incident for almost a decade. In 1999, a workplace exacerbation of his knee condition rendered him again unable to return to his former job. He was awarded TTD compensation beginning August 6, 1999. Citing Lemke, Gillette asked the commission to reset his AWW based on the fact that his earnings had increased in the years since his injury. The commission denied the request, and distinguished Lemke.
 {¶ 31} The Gillette court denied a writ of mandamus on several grounds. In the last paragraph of the Gillette decision, at ¶ 22-23, the court states:
Finally, as found by the commission, claimant does not establish special circumstances sufficient to justify a departure from the statutorily mandated calculation. The "special circumstances" provision in R.C. 4123.61 has "generally been confined to uncommon situations."State ex rel. Wireman v. Indus. Comm. (1990), 49 Ohio St.3d 286, 288,551 N.E.2d 1265. We stated in State ex rel. Cawthorn v. Indus. Comm.
(1997), 78 Ohio St.3d 112, 114, 676 N.E.2d 886, that an increase in wages over time is not uncommon and does not constitute a "special circumstance."
Here, the commission properly held that the Price case does not compel it to adjust AWW and the PTD rate.
 {¶ 32} The court's decision in State ex rel. Cawthorn v. Indus. Comm.
(1997), 78 Ohio St.3d 112, 114, cited by the Gillette court, is instructive here:
The statute [R.C. 4123.61] is significant both for what it does and does not say. The statute provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings. Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's "special circumstances" provision. This we decline to do.
"Special circumstances" is not defined, but special circumstances have "generally been confined to uncommon situations." State ex rel. Wiremanv. Indus. Comm. (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267. We note at the outset that it is not uncommon for earnings to change during the course of an employee's career. To the contrary, it is generally anticipated.
 {¶ 33} The court's decision in State ex rel. Clark v. Indus. Comm.
(1994), 69 Ohio St.3d 563, is also instructive here. In Clark, the claimant, Gladys Clark, returned to the workforce following a lengthy period of unemployment during which she had obtained custody of her granddaughter who was an abused child. Clark was injured during her first month of employment with Bill Knapps when she was working only a couple hours per week in order to see how her granddaughter would adjust to her absence. After her injury at Bill Knapps, Clark obtained full-time employment at Lazarus where she earned substantially more per week than at Bill Knapps. AWW was set by the commission at $20 based upon earnings prior to the date of injury.
 {¶ 34} Citing R.C. 4123.61's provision regarding "special circumstances," the Clark court states:
Two questions are accordingly raised: (1) Did claimant demonstrate "special circumstances" so as to warrant a departure from the standard AWW formula? and (2) If so, is the current AWW substantially just? For the reasons to follow, we answer only the first question in the affirmative.
Id. at 565.
 {¶ 35} The Clark court found that Clark had demonstrated special circumstances and that her AWW as set by the commission was substantially unjust.
 {¶ 36} Here, relator fails to show special circumstances and she fails to show that her AWW is substantially unjust in producing a PTD compensation rate of $230.
 {¶ 37} Relator was injured in June 1993, with an AWW of $251.88. She continued to work another five years until July 1998 when her AWW was allegedly $514.22. Thus, relator's weekly wage approximately doubled during the five-year period. This is not an uncommon occurrence in the workforce and thus cannot constitute a special circumstance. Moreover, an AWW of $251.85, while low, is not on its face substantially unjust.
 {¶ 38} It should be further noted that relator has not calculated the PTD rate that would be produced by an AWW adjusted to $514.22 based upon a 1998 workforce departure. Even if relator could somehow show that she is entitled to an adjusted AWW, the new PTD rate would be calculated at 66 and two-thirds percent of AWW subject to a maximum and a minimum. ( $514.22 x 66 and 2/3% = $342.81.) R.C. 4123.58. Thus, while relator's AWW allegedly doubled during the five-year period that she worked following her injury, her PTD rate would not correspondingly double by an adjusted AWW.
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.