DECISION
{¶ 1} Relator, Wayne Howell, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying his motion to reset his average weekly wage and to enter an order granting his motion. Respondents.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate determined the commission did not abuse its discretion in denying relator's motion to reset his average weekly wage. Further, the magistrate concluded no purpose would be served in remanding the matter to the commission to reiterate the analysis the magistrate presented. Rather, the magistrate determined that "[t]he commission does not have the discretion, under the undisputed facts of this case, to adjust [average weekly wage] as if the injury occurred in 1995 when relator last worked." (Magistrate's Decision, at ¶ 41.) Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's conclusions of law, rearguing those matters addressed in the magistrate's decision. Specifically, continuing to rely on Stateex rel. Price v. Cent. Serv., Inc., 97 Ohio St.3d 245,2002-Ohio-6397, relator challenges the magistrate's reliance onState ex rel. Gillette v. Indus. Comm. (2002),95 Ohio St.3d 20, a case that pre-dated Price and, according to relator, differs factually from relator's request for a recalculation of his average weekly wage.
 {¶ 4} The magistrate, however, did not premise his decision on Gillette. Rather, the magistrate considered Gillette in connection with Price, State ex rel. Lemke v. Brush Wellman,Inc. (1998), 84 Ohio St.3d 161, and State ex rel. Cawthorn v.Indus. Comm. (1997), 78 Ohio St.3d 112, 114, as well as this court's decision in State ex rel. Cooper v. Indus. Comm.,
Franklin App. No. 04AP-706, 2005-Ohio-3099 to set the general parameters that determine when average weekly wage may be recalculated under the "special circumstances" provision of R.C.4123.61. Based on those cases, the magistrate properly concluded that that statute, designed to do substantial justice for a claimant, is invoked in instances where substantial justice is lacking or the circumstances are uncommon. In Cooper, this court concluded that, although doubling a person's salary in five years may be uncommon in ordinary parlance, it was insufficient to invoke the provisions of R.C. 4123.61. Here, relator's average weekly wage, based on his earnings, a little more than doubled over a period of 16 years. As the magistrate concluded, such an increase is not uncommon under Gillette and is not grossly unfair under Price.
 {¶ 5} The magistrate further correctly concluded that returning this matter to the commission to more fully articulate the basis for its decision would be an inefficient use of resources. As the magistrate concluded, the commission had no alternative under the facts of this particular case but to deny relator's request that his average weekly wage be recalculated
 {¶ 6} Accordingly, relator's objections are overruled.
 {¶ 7} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled; writ denied.
French and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Wayne Howell, :
Relator, :
v. : No. 05AP-788
Industrial Commission of Ohio : and Hammond Tube Co., :
Respondents. :
 MAGISTRATE'S DECISION Rendered on March 30, 2006 Garson Associates Co., L.P.A., and Grace A. Szubski, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 8} In this original action, relator, Wayne Howell, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his motion to reset his average weekly wage ("AWW") and to enter an order granting his motion.
Findings of Fact:
 {¶ 9} 1. On March 2, 1979, relator sustained an industrial injury while employed with respondent Hammond Tube Co., a state-fund employer. The industrial claim is assigned number 79-10134.
 {¶ 10} 2. Apparently, sometime in 1979, AWW was set at $199.44 based upon relator's earnings during the year prior to the date of his industrial injury as provided by R.C. 4123.61.
 {¶ 11} 3. Records from the Social Security Administration indicate that in calendar year 1995, relator earned $22,814. Relator last worked during early December 1995. Effective December 12, 1995, relator began receiving temporary total disability ("TTD") compensation.
 {¶ 12} 4. On May 18, 2004, relator filed an application for permanent total disability ("PTD") compensation. Following a December 9, 2004 hearing, a commission staff hearing officer ("SHO") awarded PTD compensation starting February 19, 2004. The SHO's order indicates that the award is based in part upon a report from treating physician Dr. Kimberly Trickett and the employer's vocational report authored by Mark Anderson on April 20, 2004.
 {¶ 13} 5. Apparently, pursuant to R.C. 4123.58(A), relator is being paid PTD compensation at a weekly rate of $132.96, which is 66 and 2/3 percent of his AWW ($199.44 × 66 2/3% = $132.96).
 {¶ 14} 6. The statewide average weekly wage for the year 1979 is $241. Pursuant to R.C. 4123.58(A), the maximum weekly rate payable for PTD compensation for a 1979 injury is $160.67 ($241 × 66 2/3% = $160.67). The minimum weekly rate payable is $120.50 ($241 × 50% = $120.50). Thus, relator's weekly PTD rate of $132.96 falls between the maximum and minimum weekly rates payable for a 1979 injury. (See Supplemental Stipulation filed March 28, 2006.)
 {¶ 15} 7. On February 16, 2005, citing State ex rel. Pricev. Cent. Serv., Inc., 97 Ohio St.3d 245, 2002-Ohio-6397, relator moved that his AWW be adjusted upwards to $456.28, based upon his earnings during calendar year 1995. Relator proposed that his AWW be recalculated based upon the 50 weeks he worked during 1995 ($22,814 ÷ 50 = $456.28). Although the motion itself did not so specify, presumably, relator also wanted a weekly PTD rate adjustment to be calculated under the statute (R.C. 4123.58[A]) as if his industrial injury had occurred in 1995, rather than 1979.
 {¶ 16} 8. Following an April 6, 2005 hearing, an SHO issued an order denying relator's motion. The SHO's order explained:
As part of the determination, the Staff Hearing Officer considered disability factors in determining that the injured worker is permanently and totally disabled. The medical evidence indicated that the injured worker was capable of sedentary employment, but the injured worker was found to be unable to engage in sustained remunerative employment based on an examination of the age, education and work experience.
Neither of the vocational experts, Mark Anderson or Kimberly Togliatti-Trickett, mentioned anything about employment in the 1990s or any evidence to indicate an increased earning capacity. Therefore Staff Hearing Officer finds no special circumstances to warrant the raising of the average weekly wage to a rate that was not in the file at the time that the permanent total application was considered.
 {¶ 17} 9. Relator moved for reconsideration. On May 11, 2005, the commission mailed an order denying reconsideration.
 {¶ 18} 10. On July 28, 2005, relator, Wayne Howell, filed this mandamus action.
Conclusions of Law:
 {¶ 19} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 20} In Price, the claimant, Patrick D. Price, was severely injured on December 22, 1969. He was unable to work for over a year and received TTD compensation based on an AWW of $56, which was calculated on the basis of Price's earnings for the year preceding his injury in accordance with the standard method under R.C. 4123.61.
 {¶ 21} Price eventually returned to his employment and continued working at higher salaries for over 26 additional years, despite numerous hospitalizations, surgeries and continuing degradation of his health. He last worked on March 31, 1997. His AWW based on his earnings in 1996 was $484.44.
 {¶ 22} On December 13, 1997, Price applied for PTD compensation. In March 1999, PTD compensation was awarded at a rate of $45.50 per week. This rate was computed by multiplying Price's 1968 AWW of $56 by 66 and two-thirds percent, and then raising that amount to the statutory minimum rate for PTD awards that was in effect in 1969. Price's PTD award was then reduced to $36.40 per week after he applied for and was granted a lump-sum payment for attorney fees.
 {¶ 23} Price moved for an upward adjustment of his AWW and a recalculation of his weekly PTD payments in order to reflect his earnings in 1996, the last full year that he worked before his industrial injury forced him from the job market. Price relied upon the "special circumstances" provision of R.C. 4123.61, andState ex rel. Lemke v. Brush Wellman, Inc. (1998),84 Ohio St.3d 161.
 {¶ 24} Finding "extraordinary circumstances," the SHO granted Price's motion, reset his AWW at $484.44, and ordered that Price's PTD rate be readjusted in light of the new AWW.
 {¶ 25} In a split decision, the commission modified the SHO's order. The commission increased Price's AWW from $56 to $484.44, but then limited the PTD award to a maximum rate of $56 per week.
 {¶ 26} The Price court stated, at ¶ 12:
* * * The issue is simply whether Price's PTD award is subject to the statutory limit in effect on the date of his injury. To determine this issue, we need consider the relationship between only R.C. 4123.58 and 4123.61 as they both existed in 1969, and decide whether the $56 limit in former R.C. 4123.58, like the standard formula for determining AWW in R.C. 4123.61, must also give way in light of the "special circumstances" of this case. * * *
 {¶ 27} After a lengthy discussion of its previous decision inLemke, the Price court found that the commission properly adjusted Price's AWW pursuant to the "special circumstances" exception in R.C. 4123.61. The Price court then states, at ¶ 33-34, 40-41:
This brings us to the pivotal issue in this case, which is whether the commission abused its discretion in subjecting Price's PTD award to the statutory maximum limit in effect in 1969. See former R.C. 4123.58, 132 Ohio Laws, Part I, 1420. The commission recognized the injustice in setting the AWW of a claimant who became permanently and totally disabled in 1997 at $56, based on his earnings 29 years earlier. Nevertheless, the commission ordered that Price's PTD award "be paid at the statutory maximum rate pursuant to the provisions of Section4123.58 of the Revised Code for a 1969 injury claim." In other words, even though substantial justice dictates that for purposes of PTD compensation, Price's AWW be set at $484.44 based on his earnings in 1996, rather than at $56 based on his earnings in 1968, his PTD compensation was nevertheless limited to $56 per week based on a 1969 statutory cap. We find no "substantial justice" in this.
Considering that the Workers' Compensation Act must "be liberally construed in favor of employees," R.C. 4123.95, we cannot accept the notion that the $56 per week limitation on PTD awards in former R.C. 4123.58 was intended to override the portion of R.C. 4123.61 that requires the administrator of workers' compensation to use whatever method of wage calculation that "will enable him to do substantial justice to the claimants." Indeed, we find it implausible that the General Assembly intended a $56 per week maximum limit on PTD compensation in effect in 1969 to apply when determining the probable future earning capacity of a claimant rendered permanently and totally disabled 27 years later.
* * *
* * * [W]e conclude that applying the $56 per week cap on PTD in this case would undermine the purpose of R.C. 4123.61, i.e., to find a fair basis for award for the loss of compensation.
Accordingly, we hold that under the special circumstances of this case, the version of R.C. 4123.58 in effect on the date of Price's industrial injury does not apply in determining his maximum rate of PTD compensation. Instead, Price's PTD award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market.
 {¶ 28} Thus, the Price court (1) upheld the commission's resetting of AWW at $484.44 based upon Price's 1996 earnings under the "special circumstances" provision of R.C. 4123.61, and (2) held that the statutory cap found at former R.C. 4123.58 was rendered inapplicable by the application of R.C. 4123.61's "special circumstances" provision in effect in 1969.
 {¶ 29} In State ex rel. Gillette v. Indus. Comm. (2002),95 Ohio St.3d 20, a case that predates Price, the court distinguished Lemke; however, Gillette is instructive here.
 {¶ 30} In Gillette, the claimant, Glenn R. Gillette, injured his knee on September 10, 1990, and his AWW was set at $379.20 based upon his earnings for the year prior to the injury. Gillette had surgery on September 24, 1990, and returned to his job a short time later after collecting benefits from his employer in lieu of TTD compensation.
 {¶ 31} Gillette worked without incident for almost a decade. In 1999, a workplace exacerbation of his knee condition rendered him again unable to return to his former job. He was awarded TTD compensation beginning August 6, 1999. Citing Lemke, Gillette asked the commission to reset his AWW based on the fact that his earnings had increased in the years since his injury. The commission denied the request, and distinguished Lemke.
 {¶ 32} The Gillette court denied a writ of mandamus on several grounds. In the last paragraph of the Gillette
decision, at 22-23, the court states:
Finally, as found by the commission, claimant does not establish special circumstances sufficient to justify a departure from the statutorily mandated calculation. The "special circumstances" provision in R.C. 4123.61 has "generally been confined to uncommon situations." State ex rel. Wireman v.Indus. Comm. (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265. We stated in State ex rel. Cawthorn v. Indus. Comm. (1997),78 Ohio St.3d 112, 114, 676 N.E.2d 886, that an increase in wages over time is not uncommon and does not constitute a "special circumstance."
The court's decision in State ex rel. Cawthorn v. Indus.Comm. (1997), 78 Ohio St.3d 112, 114, cited by the Gillette
court, is instructive here:
The statute [R.C. 4123.61] is significant both for what it does and does not say. The statute provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings. Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's "special circumstances" provision. This we decline to do.
"Special circumstances" is not defined, but special circumstances have "generally been confined to uncommon situations." State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267. We note at the outset that it is not uncommon for earnings to change during the course of an employee's career. To the contrary, it is generally anticipated.
 {¶ 33} The court's decision in State ex rel. Clark v. Indus.Comm. (1994), 69 Ohio St.3d 563, is also instructive here. InClark, the claimant, Gladys Clark, returned to the workforce following a lengthy period of unemployment during which she had obtained custody of her granddaughter who was an abused child. Clark was injured during her first month of employment with Bill Knapps when she was working only a couple hours per week in order to see how her granddaughter would adjust to her absence. After her injury at Bill Knapps, Clark obtained full-time employment at Lazarus where she earned substantially more per week than at Bill Knapps. AWW was set by the commission at $20 based upon earnings prior to the date of injury.
 {¶ 34} Citing R.C. 4123.61's provision regarding "special circumstances," the Clark court states:
Two questions are accordingly raised: (1) Did claimant demonstrate "special circumstances" so as to warrant a departure from the standard AWW formula? and (2) If so, is the current AWW substantially just? For the reasons to follow, we answer only the first question in the affirmative. Id. at 565.
 {¶ 35} The Clark court found that Clark had demonstrated special circumstances and that her AWW as set by the commission was substantially unjust.
 {¶ 36} The magistrate finds this court's decision in Stateex rel. Cooper v. Indus. Comm., Franklin App. No. 04AP-706,2005-Ohio-3099, to be instructive in the analysis of Price andGillette. In Cooper, this court explained:
In analyzing the per curiam majority opinion in Price, we find that the court held that the special-circumstances exception set forth in R.C. 4123.61, which is designed to do substantial justice to the claimant for payment of the loss of future compensation, is not to be based on a mechanical representation of the claimant's earnings in some arbitrary past period but to be used only in circumstances where the application of the usual rule would lead to a grossly unfair result. That situation was found to exist in the Price case. The court did not alter the usual basis for considering AWW in the future where there was simply an increase in AWW sometime thereafter. To do that, which the Price court did not do, would upset the whole legislative scheme for compensation of AWW in the future. Thus, we find thatPrice does not support applying special circumstances to this case, as the result is not "grossly unfair."
* * *
The question is whether the language in Gillette, a case that pre-dated Price, leads to the conclusion that any "uncommon circumstance" is sufficient to lead to the further conclusion that application of the usual AWW rule is grossly unfair to the claimant. We believe, as did our magistrate and the commission, that a situation that is merely uncommon without being a disparity of the magnitude that constitutes gross unfairness is insufficient to invoke the provision of R.C. 4123.61. While we agree that, in ordinary parlance, doubling of a person's salary in five years is uncommon, we do not think that a wage increase that is greater than a hypothetical or actual average applicable to wage earners as a whole is sufficient in itself to invoke R.C.4123.61.
Id. at ¶ 6-8.
 {¶ 37} Here, the parties agree that relator's AWW of $199.44 for the 1979 injury produces a weekly PTD award of $132.96.
 {¶ 38} Following his 1979 injury, relator was able to work until December 1995, at which time his new AWW would allegedly be $456.28. The requested new AWW of $456.28 would produce a weekly PTD award of $304.16 for a 1995 injury ($456.28 × 66 2/3% = $304.16). (See Supplemental Stipulation filed March 28, 2006.)
 {¶ 39} Thus, using relator's figures, his AWW more than doubled during a period of some 16 years between his injury date and the date last worked. This increase in earnings, however, is not uncommon.
 {¶ 40} Clearly, not only is the situation here not uncommon, the result is not "grossly unfair" as was the case in Price.
See Cooper.
 {¶ 41} The magistrate recognizes that the SHO's order at issue fails to conduct the factual and legal analysis that the magistrate has presented here. Nevertheless, it would be futile to remand this action to the commission for the sole purpose of having it reiterate the analysis presented here by the magistrate. Under the undisputed facts of this case, the commission had nothing to weigh. The commission does not have the discretion, under the undisputed facts of this case, to adjust AWW as if the injury occurred in 1995 when relator last worked.
 {¶ 42} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.