DECISION
{¶ 1} Relator, Gary L. Gollihue, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that exercised continuing jurisdiction to vacate a staff hearing officer's ("SHO") order that had granted relator's motion for an adjustment of his average weekly wage ("AWW"), and to enter an order reinstating the SHO's order.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator's arguments before the commission and this court have centered on his claim that he was entitled to an AWW adjustment based upon State ex rel. Price v. Cent. Services,Inc. (2002), 97 Ohio St.3d 245, which concluded an AWW that is based on the date of the injury and that, over the course of years, either could not economically sustain the recipient or no longer approximated the income lost by a subsequent disability was a special circumstance sufficient to trigger recalculation of the AWW. However, one day after the present case was submitted to this court on objections to the magistrate's decision, the Ohio Supreme Court issued State ex rel. Stevens v. Indus. Comm.,110 Ohio St.3d 32, 2006-Ohio-3456, in which the court overruledPrice, as well as a similar case, State ex rel. Lemke v. BrushWellman, Inc. (1998), 84 Ohio St.3d 161, finding Price andLemke responded to a difficult situation in a manner that has since proven to be confusing and unworkable from a practical perspective. Stevens, at ¶ 11. The court indicated that Price
and Lemke have encouraged claimants whose AWW as originally set did not keep pace with their increased income to seek recalculation of their AWWs, and noted that, unfortunately, this predicament will eventually happen to every injured worker whose claim stays active long enough. Id., at ¶ 10.
 {¶ 4} It is well-settled that the effect of a decision of the Ohio Supreme Court overruling a former decision is not that the former was bad law, but that it never was the law. PeerlessElec. Co. v. Bowers (1955), 164 Ohio St. 209, 210. As the Ohio Supreme Court overruled Price in State ex rel. Stevens, and relator's June 10, 2004 motion for an adjustment of his AWW based on the year his disability began was based solely on the holding in Price, we must find that relator is not entitled to an adjustment of his AWW. Therefore, although for a different reason than relied upon by the commission and the magistrate, the commission's denial of relator's motion for readjustment was the proper outcome.
 {¶ 5} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections. We adopt the magistrate's decision with regard to the findings of fact and the denial of relator's writ, but do not adopt the conclusions of law contained therein, for the reasons stated above. Accordingly, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Bryant and Petree, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Gary L. Gollihue, :
Relator, :
v. : No. 05AP-924
[William E. Mabe], Administrator, : Bureau of Workers' Compensation, Industrial Commission of Ohio : and Harmon, Inc., :
Respondents. :
 MAGISTRATE'S DECISION Rendered on April 25, 2006 Thompson, Meier Dersom, William A. Meier and Adam H.Leonatti, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent and Administrator, Bureau of Workers' Com-pensation and Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} In this original action, relator, Gary L. Gollihue, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its November 23, 2004 order that exercised continuing jurisdiction to vacate a staff hearing officer's ("SHO") order that had granted relator's motion for an adjustment of his average weekly wage ("AWW"), and to enter an order reinstating the SHO's order.
Findings of Fact:
 {¶ 7} 1. On February 7, 1994, relator sustained an industrial injury while employed as an ironworker for respondent Harmon, Inc., a state-fund employer. The industrial claim is allowed for "sprain left rotator cuff; right shoulder rotator cuff tear; left rotator cuff rupture; sprain left upper arm," and is assigned claim number 94-566749. Relator's date of birth is August 22, 1939. Thus, he was 54 years of age on his date of injury.
 {¶ 8} 2. AWW for the February 7, 1994 injury was initially set at $789.67 based upon relator's earnings for the year prior to his injury pursuant to R.C. 4123.61.
 {¶ 9} 3. On July 26, 2003, relator filed an application for permanent total disability ("PTD") compensation. On his application, relator stated that August 10, 2001, was the last date on which he had worked.
 {¶ 10} 4. Following a March 12, 2004 hearing, an SHO issued an order awarding PTD compensation beginning June 24, 2002.
 {¶ 11} 5. Pursuant to R.C. 4123.58(B), relator began receiving PTD compensa-tion at the weekly rate of $482 which is the maximum weekly amount of PTD compensation that an injured worker can receive for a 1994 injury. The statewide average weekly wage ("SAWW") for the year 1994 is $482.
 {¶ 12} 6. Social Security Administration ("SSA") records show that relator earned $59,674.58 during the year 2000 and $25,425.57 during the year 2001.
 {¶ 13} 7. On June 10, 2004, citing State ex rel. Price v.Cent. Serv. Inc., 97 Ohio St.3d 245, 2002-Ohio-6397, relator moved for an adjustment of his AWW based upon the year his disability began. Based on SSA records for the years 2000 and 2001, relator calculated that his AWW should be reset at $1,025.30 based upon the 52 weeks he worked in 2000 and the 31 weeks he worked in 2001. ($59,674.58 + $25,425.57 = $85,100.15.) (52 weeks + 31 weeks = 83.) ($85,100.15 ÷ 83 = $1,025.30.)
 {¶ 14} 8. The SAWW for the year 2001 is $618. (See appendix to commission's brief.) Thus, pursuant to R.C. 4123.58(B), the maximum amount of weekly PTD compensation that an injured worker can be paid for an injury occurring in 2001 is $618. In effect, relator's June 10, 2004 motion sought an increase in his weekly PTD rate from $482 (1994 SAWW) to $618 (2001 SAWW).
 {¶ 15} 9. Following an August 27, 2004 hearing, an SHO issued an order granting relator's motion to reset his AWW at $1,025.30. The SHO's order of August 27, 2004 explains:
Pursuant to the decision in Price v. Cent. Serv. Inc., (2002)97 Ohio St.3d 245, the District Hearing Officer grants a re-adjustment of the Average Weekly Wage.
The injured worker last worked on 08/07/2001. He earned $59,674.58 in 2000 (52 weeks) and $25,425.57 in 2001 (31 weeks). Total earnings of $85,100.15 divided by 83 weeks is $1,025.30.
The Average Weekly Wage is now set at $1,025.30.
Permanent Total Disability payments beginning 06/24/2002 (original Permanent Total Disability start date) are to be readjusted.
Payment is to be made based on the year last worked, 2001. The Average Weekly Wage would entitle the injured worker to the maximum rate for that year which is $618.00.
 {¶ 16} 10. On September 16, 2004, the Ohio Bureau of Workers' Compensation ("bureau") moved for reconsideration of the SHO's order of August 27, 2004. In its motion, the bureau requested that the commission vacate the SHO's order of August 27, 2004, and enter an order denying relator's motion for a readjustment of AWW. The bureau's motion explained: "The Bureau respectfully request[s] that the IC invoke continuing jurisdiction pursuant to ORC 4123.52 over the SHO order dated 8/27/2004, based on a mistake of fact and law pursuant to the Price decision."
 {¶ 17} 11. On October 16, 2004, the three-member commission, by a vote of two-to-one, mailed an interlocutory order, stating:
It is the finding of the Industrial Commission that the Administrator has presented evidence of sufficient probative value to warrant adjudication of the request for reconsidera-tion regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow.
Specifically, it is alleged that the Staff Hearing Officer failed to adequately address the special circumstances which re-quires adjustment of the average weekly wage.
Based on these findings, the Industrial Commission directs that the Administrator's request for reconsideration filed 09/16/2004 is to be set for hearing to determine if the alleged mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.
In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issues. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdic-tion under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issues.
This order is issued pursuant to State ex rel. Nicholls v.Indus. Comm. (1998) 81 Ohio St.3d 454, State ex rel. Foster v.Indus. Comm. (1999) 85 Ohio St.3d 320, and in accordance with Ohio Administrative Code 4121-3-09.
 {¶ 18} 12. Following a November 23, 2004 hearing, the commission, with two of its members concurring, issued an order finding continuing jurisdiction to vacate the SHO's order of August 27, 2004, based upon a clear mistake of law. The commission's order finds that relator failed to show special circumstances to warrant an adjustment of AWW, and therefore denies relator's motion. The commission's order explains:
It is the finding of the Industrial Commission that it does have authority to exercise continuing jurisdiction pursuant to R.C. 4123.52. The Ohio Supreme Court has held that the Industrial Commission has continuing jurisdiction over prior final decisions when there is probative evidence of (1) new and changed circumstance subsequent to the initial order[,] (2) fraud in a claim, (3) a clear mistake of fact in the order, (4) a clear mistake of law of such character that remedial action would clearly follow, (5) or error by an inferior administrative tribunal or subordinate hearing officer which renders the order defective. See State ex rel. Nicholls v. Indus. Comm. (1988),81 Ohio St.3d 454.
It is the finding of the Industrial Commission that the Staff Hearing Officer order, dated 08/27/2004, contains a clear mistake of law such that remedial action would clearly follow. Specifically, the Industrial Commission finds that the Staff Hearing Officer failed to address whether special circum-stances exist that would warrant a readjustment of the average weekly wage that had been previously set. There-fore, the Industrial Commission may exercise continuing jurisdiction pursuant to R.C.4123.52.
After reviewing all of the evidence on file, it is the order of the Industrial Commission that the injured worker's C-86 motion, filed 06/10/2004, is denied.
The injured worker filed the C-86 motion requesting that the Industrial Commission find pursuant to State ex rel. Price v.Central Services (2002), 97 Ohio St.3d 245, that he has `special circumstances' that would warrant a recalculation of his average weekly wage and a readjustment of the perm-anent total disability rate.
It is the finding of the Industrial Commission that the injured worker has not demonstrated that special circumstances exist as to recalculate his average weekly wage pursuant to the R.C.4123.61 special circumstances exception.
The injured worker sustained an injury in 1994; his average weekly wage was set at $789.67. The injured worker continued to work until his injury took him out of the work force in 2001. The injured worker filed an application for permanent total disability compensation on 07/26/2003. A Staff Hearing Officer granted his application on 03/12/2004. The injured worker initially received the maximum amount of permanent total disability compensation ($482.00 per week) allowed by statute for a 1994 injury because of his high average weekly wage. When the injured worker left the workforce in 2001, his average weekly wage had increased to $1,025.30. That wage would be subjected to the statutory maximum of $618.00 were he awarded compensation based upon that wage.
The Industrial Commission finds that special circumstances do not exist such as to warrant an adjustment of the average weekly wage. There is no gross disparity between the average wage or permanent total disability rate, as initially calculated and awarded in this claim, and the average weekly wage and permanent total disability rate that would be effective if the statutory maximum for the year 2001 were applied. The injured worker worked for approximately six years following his injury, and experienced a modest in-crease in wages over that time. Applying the average weekly wage and rate as initially calculated and applied in the claim, as opposed to the wage and rate from 2001, which re-presents only an approximately 25% increase in the wage and rate, does not result in substantial injustice to the injured worker, and does not constitute an uncommon situation requiring the application of the special circumstances excep-tion.
For this reason, the Industrial Commission denies the injured worker's C-86 motion filed 06/10/2004 on the basis that special circumstances do not exist which would warrant a readjustment of the permanent total disability award.
Any overpayment resulting from this order shall be collected pursuant to the non-fraud provisions of R.C. 4123.511(J).
Therefore, the motion is denied.
 {¶ 19} 13. On September 2, 2005, relator, Gary L. Gollihue, filed this mandamus action.
Conclusions of Law:
 {¶ 20} Two issues are presented: (1) whether the commission abused its discretion in exercising continuing jurisdiction over the SHO's order of August 27, 2004; and (2) whether the commission abused its discretion in denying relator's motion for an AWW adjustment.
 {¶ 21} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 22} Turning to the first issue, continuing jurisdiction is not unlimited. Its prerequisites are: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; and (5) error by inferior tribunal. State exrel. Royal v. Indus. Comm. (2002), 95 Ohio St.3d 97, 99; Stateex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454.
 {¶ 23} The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. State ex rel. Gobich v. Indus.Comm., 103 Ohio St.3d 585, 587, 2004-Ohio-5990. The prerequisite must be both identified and explained to ensure that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. Id.
 {¶ 24} The commission's interlocutory order mailed October 16, 2004, articulates that the SHO's order of August 27, 2004, contains "alleged mistakes of fact and law." It also articulates that the bureau had alleged "that the Staff Hearing Officer failed to adequately address the special circumstances which requires adjustment of the average weekly wage."
 {¶ 25} Citing Gobich, relator poses several challenges to the commission's exercise of continuing jurisdiction. First, relator asserts that the commission simply disagreed with the SHO's evidentiary interpretation and, thus, no error was actually identified. Second, relator argues that the interlocutory order's identification of the alleged mistake of fact and law as the failure of the SHO "to adequately address the special circumstances which requires adjustment of the average weekly wage," is too vague to invoke continuing jurisdiction underGobich. Third, relator argues that the commission's order of November 23, 2004, fails to articulate a clear mistake of law upon which continuing jurisdiction can be premised. The magistrate rejects relator's challenges.
 {¶ 26} In Gobich, the court held that the commission had improperly exercised continuing jurisdiction when it vacated an SHO's order awarding PTD compensation by pronouncing that the SHO's order is based upon "clear mistakes of law." In Gobich,
the bureau had moved for commission reconsideration of the SHO's order.
 {¶ 27} In Gobich, the court found that the bureau's complaint with the SHO's award of permanent total disability was an evidentiary one:
* * * [T]he bureau produced evidence that it believed established a capacity for sustained remunerative employ-ment, and the SHO found otherwise. Royal, however, has specifically stated that a legitimate disagreement as to evidentiary interpretation does not mean that one of them was mistaken and does not, at a minimum, establish that an error was clear. Id.,95 Ohio St.3d at 100, 766 N.E.2d 135.
It is also unclear whether the reason for continuing jurisdic-tion is a mistake of law or a mistake of fact. While the commission claimed the former, it cited no misapplication of the law. To the contrary, it referred only to an omission of fact.Royal, moreover, has categorized evidentiary disputes as factual. This is significant because Nicholls, [State ex rel.Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320], and Royal
are uncompromising in their demand that the basis for continuing jurisdiction be clearly articulated. The com-mission's current justification is ambiguous.
Id. at ¶ 17-18. (Emphasis sic.)
 {¶ 28} Relator's reliance on Gobich is misplaced. The commission here did not disagree with the SHO's evidentiary interpretation. Actually, the relevant facts of this case are not in dispute. The commission disagreed with the SHO's legal interpretation of Price and the resulting misapplication ofPrice to the undisputed facts of this case.
 {¶ 29} Moreover, the interlocutory order mailed October 16, 2004, adequately identified the issue so that relator had a meaningful opportunity to prepare a defense to the bureau's assertion of continuing jurisdiction. Undeniably, Price
presents a legally complex issue that is the center of relator's motion for readjustment of AWW. There was no requirement that the commission present a legal analysis of the Price case in its interlocutory order in order to give relator the notice required to prepare a defense against the bureau's assertion of continuing jurisdiction. Most assuredly, relator understood that Price was at issue.
 {¶ 30} Furthermore, the commission's order of November 23, 2004, sufficiently articulates the clear mistake of law upon which the continuing jurisdiction was exercised. The commission explained how the Price case fails to support the SHO's readjustment of AWW.
 {¶ 31} Turning to the second issue, following its finding that the SHO's order of August 27, 2004, contains a clear mistake of law, the commission, in its November 23, 2004 order, denied relator's motion for an AWW adjustment. The commission, in its November 23, 2004 order, explains how Price does not support relator's motion based upon the commission's legal analysis of the Price case.
 {¶ 32} Relator cannot show a clear legal right to a new AWW calculation under Price. Analysis here begins with a review and analysis of the Price case as well as additional case authorities.
 {¶ 33} In Price, the claimant, Patrick D. Price, was severely injured on December 22, 1969. He was unable to work for over a year and received TTD compensation based on an AWW of $56, which was calculated on the basis of Price's earnings for the year preceding his injury in accordance with the standard method under R.C. 4123.61.
 {¶ 34} Price eventually returned to his employment and continued working at higher salaries for over 26 additional years, despite numerous hospitalizations, surgeries and continuing degradation of his health. He last worked on March 31, 1997. His AWW based on his earnings in 1996 was $484.44.
 {¶ 35} On December 13, 1997, Price applied for PTD compensation. In March 1999, PTD compensation was awarded at a rate of $45.50 per week. This rate was computed by multiplying Price's 1968 AWW of $56 by 66 and two-thirds percent, and then raising that amount to the statutory minimum rate for PTD awards that was in effect in 1969. Price's PTD award was then reduced to $36.40 per week after he applied for and was granted a lump-sum payment for attorney fees.
 {¶ 36} Price moved for an upward adjustment of his AWW and a recalculation of his weekly PTD payments in order to reflect his earnings in 1996, the last full year that he worked before his industrial injury forced him from the job market. Price relied upon the "special circumstances" provision of R.C. 4123.61, andState ex rel. Lemke v. Brush Wellman, Inc. (1998),84 Ohio St.3d 161.
 {¶ 37} Finding "extraordinary circumstances," the SHO granted Price's motion, reset his AWW at $484.44, and ordered that Price's PTD rate be readjusted in light of the new AWW.
 {¶ 38} In a split decision, the commission modified the SHO's order. The commission increased Price's AWW from $56 to $484.44, but then limited the PTD award to a maximum rate of $56 per week.
 {¶ 39} The Price court stated, at ¶ 12:
* * * The issue is simply whether Price's PTD award is subject to the statutory limit in effect on the date of his injury. To determine this issue, we need consider the relationship between only R.C. 4123.58 and 4123.61 as they both existed in 1969, and decide whether the $56 limit in former R.C. 4123.58, like the standard formula for determining AWW in R.C. 4123.61, must also give way in light of the "special circumstances" of this case. * * *
 {¶ 40} After a lengthy discussion of its previous decision inLemke, the Price court found that the commission properly adjusted Price's AWW pursuant to the "special circumstances" exception in R.C. 4123.61. The Price court then states, at ¶ 33-34, 40-41:
This brings us to the pivotal issue in this case, which is whether the commission abused its discretion in subjecting Price's PTD award to the statutory maximum limit in effect in 1969. See former R.C. 4123.58, 132 Ohio Laws, Part I, 1420. The commission recognized the injustice in setting the AWW of a claimant who became permanently and totally disabled in 1997 at $56, based on his earnings 29 years earlier. Nevertheless, the commission ordered that Price's PTD award "be paid at the statutory maximum rate pursuant to the provisions of Section4123.58 of the Revised Code for a 1969 injury claim." In other words, even though substantial justice dictates that for purposes of PTD compensation, Price's AWW be set at $484.44 based on his earnings in 1996, rather than at $56 based on his earnings in 1968, his PTD compensation was nevertheless limited to $56 per week based on a 1969 statutory cap. We find no "substantial justice" in this.
Considering that the Workers' Compensation Act must "be liberally construed in favor of employees," R.C. 4123.95, we cannot accept the notion that the $56 per week limitation on PTD awards in former R.C. 4123.58 was intended to override the portion of R.C. 4123.61 that requires the administrator of workers' compensation to use whatever method of wage calculation that" will enable him to do substantial justice to the claimants." Indeed, we find it implausible that the General Assembly intended a $56 per week maximum limit on PTD compensation in effect in 1969 to apply when determining the probable future earning capacity of a claimant rendered permanently and totally disabled 27 years later.
* * *
* * * [W]e conclude that applying the $56 per week cap on PTD in this case would undermine the purpose of R.C. 4123.61, i.e., to find a fair basis for award for the loss of compensation.
Accordingly, we hold that under the special circumstances of this case, the version of R.C. 4123.58 in effect on the date of Price's industrial injury does not apply in determining his maximum rate of PTD compensation. Instead, Price's PTD award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market.
 {¶ 41} Thus, the Price court: (1) upheld the commission's resetting of AWW at $484.44 based upon Price's 1996 earnings under the "special circumstances" provision of R.C. 4123.61; and (2) held that the statutory cap found at former R.C. 4123.58 was rendered inapplicable by the application of R.C. 4123.61's "special circumstances" provision in effect in 1969.
 {¶ 42} In State ex rel. Gillette v. Indus. Comm. (2002),95 Ohio St.3d 20, a case that predates Price, the court distinguished Lemke; however, Gillette is instructive here.
 {¶ 43} In Gillette, the claimant, Glenn R. Gillette, injured his knee on September 10, 1990, and his AWW was set at $379.20 based upon his earnings for the year prior to the injury. Gillette had surgery on September 24, 1990, and returned to his job a short time later after collecting benefits from his employer in lieu of TTD compensation.
 {¶ 44} Gillette worked without incident for almost a decade. In 1999, a workplace exacerbation of his knee condition rendered him again unable to return to his former job. He was awarded TTD compensation beginning August 6, 1999. Citing Lemke, Gillette asked the commission to reset his AWW based on the fact that his earnings had increased in the years since his injury. The commission denied the request, and distinguished Lemke.
 {¶ 45} The Gillette court denied a writ of mandamus on several grounds. In the last paragraph of the Gillette
decision, at 22-23, the court states:
Finally, as found by the commission, claimant does not establish special circumstances sufficient to justify a departure from the statutorily mandated calculation. The "special circumstances" provision in R.C. 4123.61 has "generally been confined to uncommon situations." State ex rel. Wireman v.Indus. Comm. (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265. We stated in State ex rel. Cawthorn v. Indus. Comm. (1997),78 Ohio St.3d 112, 114, 676 N.E.2d 886, that an increase in wages over time is not uncommon and does not constitute a "special circumstance."
The court's decision in State ex rel. Cawthorn v. Indus.Comm. (1997), 78 Ohio St.3d 112, 114, cited by the Gillette
court, is instructive here:
The statute [R.C. 4123.61] is significant both for what it does and does not say. The statute provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings. Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's" special circumstances" provision. This we decline to do.
"Special circumstances" is not defined, but special circum-stances have "generally been confined to uncommon situa-tions." State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267. We note at the outset that it is not uncommon for earnings to change during the course of an employee's career. To the contrary, it is generally anticipated.
 {¶ 46} The court's decision in State ex rel. Clark v. Indus.Comm. (1994), 69 Ohio St.3d 563, is also instructive here. InClark, the claimant, Gladys Clark, returned to the workforce following a lengthy period of unemployment during which she had obtained custody of her granddaughter who was an abused child. Clark was injured during her first month of employment with Bill Knapps when she was working only a couple hours per week in order to see how her granddaughter would adjust to her absence. After her injury at Bill Knapps, Clark obtained full-time employment at Lazarus where she earned substantially more per week than at Bill Knapps. AWW was set by the commission at $20 based upon earnings prior to the date of injury.
 {¶ 47} Citing R.C. 4123.61's provision regarding "special circumstances," the Clark court states:
Two questions are accordingly raised: (1) Did claimant demonstrate" special circumstances" so as to warrant a departure from the standard AWW formula? and (2) If so, is the current AWW substantially just? For the reasons to follow, we answer only the first question in the affirmative.
Id. at 565.
 {¶ 48} The Clark court found that Clark had demonstrated special circumstances and that her AWW as set by the commission was substantially unjust.
 {¶ 49} The magistrate finds this court's decision in Stateex rel. Cooper v. Indus. Comm., Franklin App. No. 04AP-706,2005-Ohio-3099, to be instructive in the analysis of Price andGillette. In Cooper, this court explained:
In analyzing the per curiam majority opinion in Price, we find that the court held that the special-circumstances exception set forth in R.C. 4123.61, which is designed to do substantial justice to the claimant for payment of the loss of future compensation, is not to be based on a mechanical representation of the claimant's earnings in some arbitrary past period but to be used only in circumstances where the application of the usual rule would lead to a grossly unfair result. That situation was found to exist in the Price case. The court did not alter the usual basis for considering AWW in the future where there was simply an increase in AWW sometime thereafter. To do that, which the Price court did not do, would upset the whole legislative scheme for compensation of AWW in the future. Thus, we find thatPrice does not support applying special circumstances to this case, as the result is not" grossly unfair."
* * *
The question is whether the language in Gillette, a case that pre-dated Price, leads to the conclusion that any "uncommon circumstance" is sufficient to lead to the further conclusion that application of the usual AWW rule is grossly unfair to the claimant. We believe, as did our magistrate and the com-mission, that a situation that is merely uncommon without being a disparity of the magnitude that constitutes gross unfairness is insufficient to invoke the provision of R.C. 4123.61. While we agree that, in ordinary parlance, doubling of a person's salary in five years is uncommon, we do not think that a wage increase that is greater than a hypothetical or actual average applicable to wage earners as a whole is sufficient in itself to invoke R.C.4123.61.
Id. at ¶ 6-8.
 {¶ 50} Here, relator's AWW of $789.67 produces a weekly PTD rate of $482 which is the maximum amount of PTD compensation that an injured worker can be paid for a 1994 injury. In fact, $482 is the SAWW for the year 1994.
 {¶ 51} Following his 1994 injury, relator was able to work until August 2001 at which time his adjusted AWW would allegedly be at $1,025.30.
 {¶ 52} Thus, within about seven years, relator's AWW increased about 30 percent. This increase in earnings is not uncommon. Moreover, not only is the situation here not uncommon, relator's PTD rate is not "grossly unfair" as was the case inPrice. See Cooper. Thus, the commission properly denied relator's motion for an adjustment of AWW.
 {¶ 53} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.